METROPOLITAN NAT. BANK *v.* ST. LOUIS DISPATCH CO. *et al.*

*(Circuit Court, E. D. Missouri, E. D.* November 21, 1888.)

1. CHATTEL MORTGAGE—GOOD-WILL—FORECLOSURE.
    A mortgage of the "machinery, type, presses, cases, furniture, paper, forms, and tools" of a newspaper company, together with the "good-will" of its business. cannot be foreclosed as to the good-will after all the tangible property covered by the mortgage has been alienated, worn out, or destroyed, and the corporation has become consolidated with another newspaper corporation.

2. SAME—GOOD-WILL—SALE OF SAME.
    The good-will of a business is property that may be mortgaged or sold in connection with the business; but it cannot be sold, by judicial decree or otherwise, unless it be in connection with a sale of the business on which it depends, and of which it is a mere incident.

3. SAME—LIEN—CONSOLIDATION.
    Where a newspaper, whose good-will has been mortgaged, is consolidated with another paper, and the name of the paper is changed, and a new corporation is formed to publish it, the lien, of the mortgage does not attach to the good-will of the consolidated paper, though the new corporation occupied. for some years the old place of business, and paid interest for 10 months on the mortgage debt.

4. SAME—ASSOCIATED PRESS—MEMBERSHIP.
    Inasmuch as it appeared that membership in the Western Associated Press can only be sold to publishers of newspapers, and that a transfer of such membership would not entitle the transferee to the privileges of a member unless voluntarily accorded him by the association, *held,* that a bill would not be entertained to foreclose a mortgage on a certificate of membership or share of stock in such association unless the association was made a party defendant.

In Equity. On demurrer.

Bill by the Metropolitan National Bank of New York, against the St. Louis Dispatch Company, the Dispatch Publishing Company, and Henry L. Sutton, trustee, to foreclose a mortgage.

*John M. Dickson,* for complainant.

*Dyer, Lee & Ellis* and *Chas. & C. E. Gibson,* for defendants.

THAYER, J. This is a suit to foreclose a mortgage. The facts stated in the bill may be summarized as follows: On June 1, 1877, the St. Louis Dispatch Company was engaged in publishing a daily newspaper called the "St. Louis Dispatch," and on that day, being in need of money, it conveyed its "machinery, type, presses, cases, furniture, paper, forms, and tools, together with the good-will of the St. Louis Dispatch Company, and its franchises of every kind and description, rights, privileges, and property, including its interest in the Western Associated Press, and any and all shares by it owned in the Western Associated Press," to Henry L. Sutton, as trustee, to secure the payment of its note for $15,000, that day executed in favor of F. J. Bowman, and made payable two and one-half years after date, with interest at 9 per cent. per annum. At the same time it assigned and delivered to Sutton the certificate for one share of stock which it owned in the Western Associated Press. Subsequently the same property, together with much other property, was conveyed to a trustee in another and second mortgage or deed of trust, to secure a further loan made to the St. Louis Dispatch Company. Under this second mortgage a foreclosure sale took place about a year prior to the maturity of the first mortgage. The sale so made was made subject to the lien of the first mortgage. The purchaser under the second mortgage took possession of all of the property covered by the first and second mortgages then *in esse*, and immediately consolidated the St. Louis Dispatch with another evening paper, called the "Evening Post." A new corporation was formed under the name of the "Dispatch Publishing Company," to continue the publication of the consolidated paper, which was thereafter called "The Post-Dispatch." For some years after the consolidation, the Post-Dispatch was published in the same building formerly occupied by the St. Louis Dispatch Company. The new corporation also enjoyed for some time all the privileges which accrued from the old company's membership in the Western Associated Press, but eventually the Associated Press issued to it a certificate of membership, in lieu of that issued to the old company, although the old certificate was, and still is, in the hands of the trustee in the first mortgage, to whom it was pledged. The new corporation (the Dispatch Publishing Company) also paid the interest that accrued on the Bowman note for some ten months after the consolidation of the two newspapers. It refused to pay the note, however, when the same matured on December 1, 1879. Thereupon the trustee in the first mortgage demanded of the Dispatch Publishing Company all the property covered by the first mortgage, including the good-will of the St. Louis Dispatch Company, but the demand was not complied with. The bill avers that at the date of such demand, to-wit, on December 1, 1879, the Dispatch Publishing Company "had alienated,.

destroyed, or gradually used up, all the machinery, type, presses, and property of a perishable nature, of the said St. Louis Dispatch Company." There are many other allegations in the bill, which is very prolix, but the foregoing are the principal averments by which the sufficiency of the pleading must be tested. The relief prayed for is that the court will order a sale of the good-will of the business described in the mortgage of June 1, 1877, and the other property therein described, or the property that has since been substituted therefor, including the membership in the Associated Press. Complainant is now the owner of the Bowman note.

1. The first fact to be noted is that, when the first mortgage matured, all the tangible property covered by that mortgage had been alienated, worn out, or destroyed, and was no longer in the possession of the purchaser under the second mortgage. Whatever tangible property (machinery, type, presses, etc.) was then in the hands of the Dispatch Publishing Company, had been acquired by it subsequent to the purchase under the second mortgage, and the property so acquired was clearly not embraced by the terms of the first mortgage. The bill shows that at the present time there is no property in the hands of the defendants on which a decree foreclosing the first mortgage can operate, unless it is the good-will of the St. Louis Dispatch Company, and the membership in the Associated Press. Now, while the good-will of a business is property that may be sold or mortgaged, yet it is property of a very peculiar and exceptional character. It is intangible property which, in the nature of things, can have no existence apart from a business of some sort that has been established and carried on at a particular place; and it cannot be sold by judicial decree or otherwise unless it be in connection with a sale of the business on which it depends. Story, Partn. § 99; *Robertson* v. *Quiddington*, 28 Beav. 529; 3 Pom. Eq. Jur. § 1355, and notes; Smith, Merc. Law, 188, and cases cited. As the bill does not show that there is any established business (or any tangible property for that matter) which the court can order to be sold for the satisfaction of complainant's mortgage, it seems clear that it cannot decree a sale of the good-will in question.

2. It is claimed by complainant's counsel that the lien of the mortgage of June 1, 1877, extends to the entire business and property of the Dispatch Publishing Company, including its good-will, and that the court should so decree, and enter an order of sale accordingly. This contention is based on the ground that the Dispatch Publishing Company acquired the place of business of the St. Louis Dispatch Company, and certain property, with the good-will attached thereto, subject to the lien of the first mortgage, and that it subsequently paid interest for 10 months on the note secured by the first mortgage, and eventually consolidated the property and good-will so acquired with the good-will and property of another newspaper. I regard this position as untenable. The acts referred to, neither singly nor collectively, operated to extend the mortgage lien over property not originally covered by the mortgage. If any of the acts above recited amounted to an assumption of the mortgage debt by the purchaser under the second mortgage, (as to which no opinion is ex-

pressed,) the remedy is at law on such promise, and not by bill to foreclose the mortgage. So far as the tangible property covered by the first mortgage is concerned, (that is to say, machinery, type, presses, etc.,) the bill does not show that it was wrongfully commingled with other after-acquired property, either by the morgagor or purchaser under the second mortgage, so as to become undistinguishable. The allegation is that it was alienated, or gradually worn out by use, before the first mortgage matured. There is no occasion, therefore, to invoke the rule that governs in case of a wrongful admixture of property. The bill does show that the St. Louis Dispatch was consolidated with the Evening Post seven and one-half years before this bill was filed, and that the good-will of the former paper was either destroyed or was converted to the use of the new company. But it by no means follows that the effect of such act was to make the first mortgage a lien on all the property thereafter acquired and now owned by the new concern, the Dispatch Publishing Company. If the consolidation was wrongful in so far as it affected the good-will of the St. Louis Dispatch Company, (as to which no opinion is expressed,) it could only have the effect of rendering the wrong-doer liable for the value of the good-will at the time of its destruction or conversion. Assuming that the purchaser under the second mortgage wrongfully appropriated or destroyed the good-will of the St. Louis Dispatch Company, and that a remedy once existed for such wrong, the question would then arise, whether the remedy for the wrong is at law or in equity. It is not necessary to express an opinion on the latter question, for, if a bill to obtain a decree against the Dispatch Publishing Company for the value of the good-will in question could at one time have been maintained, based on the ground that it had wrongfully appropriated or destroyed the good-will, it seems clear that the right to maintain such bill is now barred by laches, inasmuch as more than seven years had elapsed after the wrong was committed before the bill was filed. An action at law to recover the value of personal property wrongfully converted or destroyed must be brought within five years, under the limitation act in this state; and, by analogy with the rule which prevails at law, a proceeding in equity, based on similar grounds, should be held barred by the same period, even if it is possible to maintain such a proceeding in equity.

3. Sufficient reasons also exist in my opinion for refusing to order a sale of the share of stock or membership in the Western Associated Press, which was hypothecated to secure the Bowman note. It is evident that the stock in question is not property of an ordinary character, such as may be transferred at will by the owner. The bill shows that it is only vendible to persons or corporations who are engaged in publishing a newspaper or other periodical, and that no other persons or corporations are eligible to membership in the association. It furthermore appears that the stock issued by the association is of the nature of a certificate of membership therein, and that it merely entitles the holder, if he happens to be the proprietor of a newspaper, to receive intelligence which the association is engaged in collecting for the benefit of its members. It is very

doubtful whether stock of that description can be pledged or, mortgaged by the holder as security for a debt, without the consent of the corporation by whom it is issued. From the statements contained in the bill with respect to the character and functions of the organization known as the "Western Associated Press," it appears to me clear that a purchaser at a foreclosure sale of the share or stock or membership now in question, even if the court should order such a sale, would not acquire the privileges of membership in the association, unless it should see fit to accord him such privileges. Consent on the part of the corporation to the admission of a member appears to be essential to constitute a.person a member. But whether the St. Louis Dispatch Company could or could not of its own motion pledge its membership to secure the payment of a debt, it is obvious that the Associated Press is interested in the determination of that question, especially in view of the fact that it has long since admitted another corporation to membership in place of the St. Louis Dispatch Company, and the question ought not to be determined in a proceeding like the present, to which the association is not.a party. Neither would it be proper to order a sale of the interest of the pledgeor in the certificate of stock in question, unless it appears that some valuable property right or privilege would pass by such sale, which the association would be bound to recognize. From any point of view that may be taken, no relief, in my opinion, can be granted consistently with the averments of the amended bill, and the demurrer thereto is accordingly sustained.