CASE 56—ACTION BY THE COMMONWEALTH AND OTHERS
AGAINST THE KENTUCKY DISTILLERIES AND
WAREHOUSE COMPANY TO LIST CERTAIN PROP-
ERTY FOR TAXATON.—March 2, 1909.

# Commonwealth v. Ky. Distilleries and Warehouse Co.

Appeal from Franklin Circuit Court.

H. G. Botts, Special Judge.

Judgment for defendant, plaintiffs appeal—Affirm-ed.

1   Trade-marks and Trade-names—Definition of "Trade-Mark."—
A trade-mark in its last analysis is a name, sign, or symbol,
which indicates or certifies that a given article or commodity
is in reality what it claims or purports to be, and while a
trade-mark, in a qualified sense, is property in the hands of its
owner, it has no intrinsic value, being merely a certificate of
the truth.

2.  Taxation—Taxable "Property"—Trade-Marks—A trade-mark
used in the sale of a commodity is not property as that term
is used in Const. art. 174, and St. 1909, Section 4020, providing
for the taxation of all "property" in the state, etc.

3   Banks and Banking—"Checks"—Appropriation of Funds.—A
check is an absolute appropriation of so much of the funds of
the drawer in the hands of the bank as is called for by the
instrument, so that, after notice to the bank, it cannot be with-
drawn by the drawer, the money becoming the absolute prop-
erty of the holder, and this notwithstanding the drawer may
afterwards deliver another check to an innocent holder with-
out notice of the first one, who by first presenting his check
may defeat the claim of the first check holder.

4   Taxation—Bank Balance—In determining the amount of a tax-
payer's bank balance on the 15th day of September of each
fiscal year, which he is required to return for taxation, he is

Commonwealth v. Ky. Distilleries & Warehouse Co.

entitled to charge all outstanding checks remaining unpaid drawn in good faith against the apparent balance in the bank.

WILLIAM H. HOLT for appellant.

M. J. HOLT and FRANK DAILEY of counsel.

### POINTS AND AUTHORITIES.

1. Money and trade-marks that indicate where an article is made, of a non-resident, when in use in this state, have a situs here and are assessable for taxation. Constitution of Kentucky, Section 172; Kentucky Statutes, Section 4020; Acts of Kentucky Legislature, 1906, page 88; 28 Ky. Law Rep. 199, City of Covington v. Pullman Company; 177 U. S. 133, Bristol v. Washington County; 102 S. W. Rep., 859 (Ky.) Commonwealth v. R. G. Dun & Co., (31 Ky. Law Rep. 561); Acts Ky. Legislature, 1904, page 250; Higgins Trustees v. Coml'th (Court of Appeals, June 19, 1907.)

2. Such trade-marks are assessable for taxation like other personal property. Brown on Trade-Marks, Sections 284, 296.

3. The amount to a person's credit in bank on the statutory day of assessment, must be assessed against him without deduction by either outstanding checks, or drafts on his debtors, credited to him by the bank, but not then collected. Kentucky Statutes, Sections 4023, 4033, 4047, 4052, 4058.

D. W. LINDSEY for appellee.

WM. MARSHALL BULLITT, LEVY MAYOR and A. S. AUSTRIAN of counsel.

1. No sufficient description of property alleged to be omitted— To say that one owned and had at his distillery or office an assessing dates personal property of certain named classes or species, "the specific character thereof and value are known to defendant and it is impossible for plaintiff to ascertain and state it," is not such a statement of the description and value of the property proposed to be assessed as is required by the law which forbids a judgment in such proceeding "unless the statement filed shall contain such a description of the property sought to be assessed as will enable the court to identify it." Section 4, Art. 17 Chap. 22 Acts 1906.

2. Appellee being a foreign corporation only its tangible property is taxable in this state. Until the legislature provides for

Commonwealth v. Ky. Distilleries & Warehouse Co.

the taxation of intangible property of a non-resident and gives it a situs in the state such property is not liable to assessment. Ayer & Lord Tie Co. vs. Keowan, 28 Ky. Law Rep. 201; Callahan, Sheriff vs. Singer Manufacturing Co., 29 Ky. Law Rep. 125.

3.  Personal property of non-residents assessable and taxable only in the county where located. Ayer & Lord Tie Co. vs. Keown, 29 Ky. Law Rep. 110.

4.  Tax payers lists prima facie correct—Burden is upon Revenue Agent to show in what particular tax payers list given in to assessor is an improper one. Valuation fixed upon property by assessor, and afterwards by Board of Supervisors, is conclusive not only upon the tax payer but also upon the commonwealth. Muir's Admr. vs. Commonwealth, 14 Ky. Law Rep. 478; Coulter, Auditor vs. Louisville Bridge Co., 24 Ky. Law Rep. 809; Citizens Natl. Bank vs. Commonwealth, 25 Ky. Law Rep. 2254.

5.  Evidence discloses no property of appellee assessable or taxable in Franklin County, Ky., which was omitted from lists given in to assessor.

6.  Bank Deposits—"Cash on deposit in bank" liable to assessment for taxation is the amount of tax payers deposit after deducting outstanding checks issued for value and in regular course of business prior to assessing date. "A check given for value on an ordinary bank deposit is an assignment of the fund pro tanto as between the maker and payee." Farmers Bank & Trust Co. vs. Newland, 97 Ky. 464; Taylor admr. vs. Taylor's assignee, 76 Ky. 470; Lester & Co. vs. Given Jones & Co., 8 Bush 357; Raiser vs. Natl. Ech. Bank, 88 Am. St. Rep., 980; Fonner vs. Smith, 11 L. R. A., 828 and note; Barnard vs. Whitney Natl. Bank, 12 L. R. A. 302; First Natl. Bank vs. Clark, 17 L. R. A. 580; Bank Antego vs. Union Tr. Co., 23 L. R. A. 611; Aikin vs. Jones, 25 L. R. A. 523; Neblac vs. Park Natl. Bank, 29 L. R. A. 159.

7.  Rule not changed by Negotiable Instrument Act.

8.  A trade-mark of itself has no value for assessment or taxation. Am. & Eng. Ency of Law Vol. 26, page 241; Thornton vs. Crowley, 47 N. Y. Sup. Ct. 527; Hopkins on Unfair Trade, pages 2, 11, 13 and 16; Young vs. Jones 3 Hughes 274. If a trade-mark be property, these here involved are intangible property of a non-resident and have no situs for taxation here. (Pages 9 and 10.)

OPINION OF THE COURT BY JUDGE BARKER.—Affirming.

This is a proceeding by the commonwealth of Kentucky, through a revennue agent, against the Kentucky Distilleries & Warehouse Company, a New Jersey corporation doing business in this state, to require it to list certain of its property alleged to have been omitted from its tax list for the years 1901 to 1905, inclusive. The appellee owns several whisky distilleries in Franklin county, and has its principal Kentucky office in Frankfort, and through the banks of that city transacts annually a considerable financial business. The progress of the case developed that there were two classes of property, and only two, which the commonwealth claimed had been omitted for taxing purposes for the years in question. The first of these consisted of the trade-marks owned and used in selling the output of appellee's several distilleries. Among these are the "Spring Hill," "Cedar Run" and "Arnold Spring" brands; and they, it was proved in the case, are worth, in connection with the distilleries and business to which they belong, a large sum of money. The second class or kind of property claimed to have been omitted are the several cash balances which the appellee had in banks in Frankfort on the 15th day of September of the respective fiscal years involved herein. The right to tax these two classes of property will be discussed in the order mentioned.

Is a trade-mark property within the meaning of the fiscal laws of Kentucky? Section 174 of our Constitution provides: "All property, whether owned

by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this Constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises.'' To carry out the above provision of the Constitution, section 4020 of the Kentucky Statutes was enacted by the General Assembly of the commonwealth of Kentucky, which is as follows: ''All real and personal estate within this state, and all personal estate of persons residing in this state, and of all corporations organized under the laws of this state, whether the property be in or out of this state, including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale.'' Undoubtedly a trade-mark, in a qualified sense, is property in the hands of the owner, and as such it may be sold and assigned with the business to which it belongs and of the excellence of which it is a certificate. Equity, when properly invoked, will always prevent the wrongful infringement of property rights in a trade-mark. But in the abstract a trade-mark cannot be considered property. It cannot be disassociated from the business to which it belongs and in which it inheres. A trade-mark is property largely in the sense that a good name is property, and its value, in a large part, is predicated upon that philosophy which declares that ''a good

name is rather to be chosen than great riches," and "* * * is better than precious ointment." In its last analysis a trade-mark is a name or sign or symbol which indicates or certifies that a given article or commodity is in reality what it claims or purports to be. It has no intrinsic value whatever. It is merely a certificate of the truth. The property in which it inheres is just as valuable intrinsically without the trade-mark as with it. The property itself is valuable. It is the result of the labor or the ingenuity or the honesty of the owner or manufacturer. Take away the trade-mark, and the property remains in every respect the same as it was before. The addition of the trade-mark simply tells the would-be purchaser that the goods are what he seeks. In many respects a trade-mark resembles, and perhaps is identical with, the good will of a business or establishment. The good will of a business is often worth money, but so far as we know, and believe, it has never been considered property for the purposes of taxation. It may, indeed, in real value be of far greater worth, even in money, than the business house to which it is attached. It was in this sense that Dr. Johnson, speaking to Boswell concerning the sale of his deceased friend Thrale's brewery, said that he was proposing to sell, not alone the building and the pots and pans and tubs, but "a potentiality of wealth beyond the dreams of avarice." But for all that we imagine it would have been somewhat difficult to arrive at the market value of the good will of the Thrale brewery. The learned counsel who argued this case for the commonwealth with all his diligence and learning has not been able to cite us to any authority where a trade-mark or the good will of a business

has been considered as property within the meaning of the revenue law. And it seems to us that the fact that no fiscal officer or agent has ever before sought to tax these as property is persuasive argument against our reaching the conclusion concerning them desired by the commonwealth in this case. The statute under which the right to tax this class of property is sought to be maintained has been on the book for many years and in schedules prepared for the purpose of aiding the officers in assessing all the property of the commonwealth there is a most exhaustive list of that which is assessable, and in which patent rights are especially named, showing that the General Assembly had its mind drawn in the very direction of the property under discussion; and, although trade-marks have been in common use not only as connected with the manufacture and sale of whisky, but in connection with all sorts of manufactured articles, yet we find no mention of them in the assessment schedules.

In Avery & Sons v. Meikle & Co., 81 Ky. 73, it is said: "A trade-mark is a sign or symbol primarily confined exclusively to the indication of the origin or ownership of the goods to which it may be attached, and it may be composed of any name, device, line, figure, mark, word, letter, number, or combination or arrangement of any or all of these which would serve the sole purpose of a trade-mark, and which no other person can adopt or use with equal truth. * * * There is no abstract right in a trade-mark. It is property only when appropriated and used to indicate the origin or ownership of an article or goods; and its real value consists in the confidence and patronage of the public, secured through its instrumen-

tality in acquainting them with the origin and own-
ership of an article, which thus gains reputation for
its superior qualities.  Of this reputation its owner
cannot be deprived, without his consent, either by the
use of forbidden means or the illegal employment of
things otherwise lawful." In Macmahan Pharmacal
Co. v. Denver Chemical Mfg. Co., 113 Fed. 468, 51
C. C. A. 302, the Circuit Court of Appeals said: "By
familiarity with the trade-mark attached to the own-
er's merchandise, purchasers are enabled to buy what
they desire, and are thereby protected against im-
position and fraud.  Disassociated from merchandise
to which it properly appertains, it lacks the essential
characteristics which alone give it value and becomes
a false and deceitful designation.  It is not itself such
property as may be transferred." In Dant v. Head,
90 Ky. 255, 13 S. W. 1073, 29 Am. St. Rep. 369, it was
held that "a trade-mark affixed to articles manufac-
tured at a particular place may be lawfully sold and
transferred with the establishment." In Witthaus
v. Braun, 44 Md. 303, 22 Am. Rep. 44, the court held:
"The mere sale of a trade-mark, apart from the ar-
ticle to which it is affixed, confers no right of owner-
ship because no one can claim the right to sell his
goods as goods manufactured by another." And in
the note to Partridge v. Menck, 47 Am. Dec. 281, the
learned author says: "Nor is it by virtue of any
property in the mark itself that the owner thereof is
protected, although, as it is said, he is secured by the
law in the exclusive right to the use of such mark as
a species of property.  A mere trade-mark is an in-
tangible thing, incapable of ownership apart from the
articles to which it is applied. * * * The trade-mark
is protected, therefore, not because it is of itself a

thing susceptible of ownership, but because it is the sign or symbol of a business reputation or good will which is a valuable property." In 28 Am. & Eng. Encyc. of Law, 399, it is said: "A trade-mark being a mere device to secure to one the benefits of the good will attaching to his business, it cannot exist apart from such good will. Accordingly, when the business and good will become extinct, the trade-mark dies also. * * * It follows that trade-marks cannot be assigned except for use in the same way and for the same purpose as that for which the trade-mark was originally adopted. * * * Hence it is held that a trade-mark cannot be assigned, except in connection with the particular business in which it has been used and for continued use upon the same article or class of articles, which it was first applied to and used upon by its original adopter. * * * A trade-mark cannot be sold as an absolute right disassociated from a particular business or goods." In Hopkins on Trade-Marks, section 14, it is said: "There can, finally, be no right in or to a trade-mark apart from its use. 'The mere sale of a trade-mark apart from the business in which it has been used confers no right of ownership, because no one can claim the right to sell his goods as goods manufactured by another.' There is no such thing as a trade-mark 'in gross,' to use that term of analogy. It must be 'appendant' of some particular business in which it is actually used upon or in regard to specified articles." Section 15, Id.: "Inasmuch as there can be no title in a trade-mark apart from the good will of the business in which it is used, it follows that, in an assignment of the business and good will of the owner of the mark, the title to the trade-mark, without being specially men-

tioned, passes to the assignee." In 28 Am. & Eng. Encyc. of Law, 405, it is said: "A trade-mark cannot be seized and sold upon execution or attachment apart from the business or articles with which it has been used." In Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436, 13 Sup. Ct. 944, 37 L. Ed. 799, the Supreme Court of the United States said: "Good will is in many cases a valuable thing, although there is difficulty in deciding accurately what is included under the term. It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently." In Hart v. Smith, 159 Ind.. 182, 64 N. E. 661, 58 L. R. A. 949, 95 Am. St. Rep. 280, an effort was made to tax the good will of a newspaper, but the Supreme Court of Indiana held that this could not be done, upon the ground that the good will of a newspaper was worth nothing apart from the publication of the paper itself.

Upon the foregoing authority, we feel constrained to hold that the trade-marks used by the appellee in connection with its several brands of whisky are not properly taxable under the revenue law of Kentucky. Nor do we think that the commonwealth established the charge that the appellee had on deposit in the several banks of Frankfort larger sums than it returned to the assessor on its tax list. It is true it was shown that on the respective fiscal days the appellee had on deposit apparently a much larger sum than it listed for taxation; but it was also shown, without contradiction, that these balances were apparent only, and not real; that before the fiscal day appellee had in good faith drawn checks on its funds

in bank in payment of prior bona fide indebtedness, which reduced its apparent balance to that actually returned to the assessor. Now, the taxpayer is only required to pay upon that which he owns. Having drawn checks against the amount of its deposit, to the extent of these checks appellee did not own the balance in bank. It only owned the residuum left after the checks were paid. In Kentucky the rule has always been that a check is an absolute appropriation of so much of the funds in the hands of the bank, or to the credit of the drawer, as is called for by the instrument, and, after notice to the bank, the amount cannot be withdrawn by the drawer; the money becoming the absolute property of the person in whose favor the check is drawn, and the drawer losing all interest in the fund to the extent of the check. Lester & Co. v. Given & Co., 8 Bush, 357; Weinstock v. Bellwood, 12 Bush, 140; Merchants' National Bank v. Robinson, 97 Ky. 552, 31 S. W. 136, 28 L. R. A. 760; Columbia Finance & Trust Co. v. First National Bank, 116 Ky. 364, 76 S. W. 156; Farmers' Bank v. Newland, 97 Ky. 464, 31 S. W. 38; Deatheridge v. Crumbaugh, 8 Ky. Law Rep. 592; Rosenbaum & Co. v. Lytle, 8 Ky. Law Rep. 607. It is no answer to the rule established by these authorities to say that the drawer may afterwards deliver another check to an innocent holder without notice of the first check, and that the latter may by first presenting his check defeat the claim of the first holder. As between the drawer and the payee, the title to the fund represented by the check passes to the latter and is his property.

In the case at bar the appellee produced for inspection all of the checks, which reduced its apparent

deposits to those which it returned for taxation; and we have no doubt of its good faith in the matter. As indicating a legislative construction of the question in hand, it is worthy of notice that in the schedule prepared for the assessment of property, in the last revenue law, item No. 6 is as follows: "Amount of cash on deposit in bank, and against which checks in payment of prior bona fide indebtedness have not been drawn"—thus showing the legislative purpose to tax only real balances of the taxpayer, and to give him credit for all outstanding checks paying in good faith prior indebtedness.

For the foregoing reasons, the judgment of the circuit court is affirmed.