## Supreme Council Catholic Knights of America v. Wathen, et al.

(Decided December 13, 1918.)

### Appeal from Union Circuit Court.

Beneficial Associations—Non-payment of Assessments—Suspension. —Where the member of a benefit association is suspended for non-payment of illegal assessments, the beneficiary named in the certificate is entitled to recover thereon provided the excess of the illegal assessments over the legal assessments was sufficient to pay all assessments that could have been legally assessed against the certificate in the lifetime of the insured; and the burden of showing that fact is on the beneficiary.

FREDERICK H. BACON, PERRY B. MILLER and CHARLES F. TAYLOR for appellant.

DRURY & DRURY for appellee.

RESPONSE OF THE COURT BY JUDGE MILLER—Granting a Rehearing and Reversing.

The opinion in this case stated, in effect, that the petition was defective because it did not show that the amount paid by Wathen as excessive premiums was sufficient to pay all legal assessments made between October, 1904, when he was suspended for non-payment of dues, and November, 1908, the time of his death, but that the defect was cured by the answer. 179 Ky. 66.

In Supreme Council Catholic Knights of America, v. Fenwick, 169 Ky. 269, which was an action against this appellant upon a policy substantially the same that we now have under consideration, the court announced the law in such cases to be as follows:

"Since the increased assessments were invalid, it follows that if the excess of the illegal assessments over the legal assessments was sufficient to pay all assessments that could have been legally assessed against the certificate in the lifetime of the insured, and to continue the certificate in force up to the time of his death, plaintiffs are entitled to recover on the certificate. The burden of showing this was on the plaintiffs. . . . The evidence not being sufficient to show that the excess of the illegal assessments over the legal assessments was sufficient to continue the certificate in force up to the time of the death of the insured, it follows that the trial

court erred in so finding, and for that reason alone a new trial is awarded on the original appeal.''

In referring to the foregoing language taken from the opinion in the Fenwick case, the opinion in this case said:

''Appellant insists that under the language above quoted, it is now entitled to lay and make such assessment or assessments, as would be sufficient to meet all the death losses occurring within the period between the time the insured ceased to pay and his death, according to the constitution and laws of the society. But that is not what the language means, or the idea it was intended to convey. If the excess of the illegal assessments over the legal assessments was sufficient to pay all assessments that *were legally assessed* against the certificate in the lifetime of the insured, and to continue the certificate in force up to the time of the death, the plaintiffs are entitled to recover on the certificate. It is not the assessments which *could* have been lawfully made which control, but those which *were in fact,* lawfully assessed. . . . It was the duty of the society to apply this (excess) upon the lawful assessments *made* against Wathen until the same was exhausted, and thus carry his benefit certificate in full force. . . . It (the answer) nowhere avers that other assessments were levied against Wathen which he faled to pay. And, since Wathen was only bound to pay the assessments duly and regularly levied against him according to the laws of the order and of the Commonwealth, and as he had in the treasury of the society the sum of $155.89, which it held in trust to be applied upon such lawful assessments, it was not within the power of the society to suspend him as of October 10th, 1904, for non-payment of dues, nor indeed at any time until the whole of the excess premiums so unlawfully collected by the society were consumed by the payment of lawful assessments.''

Upon a reconsideration of the question, we are of opinion that the interpretation given in the original opinion, as above quoted, of the language used in the Fenwick case, was incorrect.

The effect of the Fenwick case is, that in order to recover, the insured must show that his over-payments of premiums were sufficient to pay the number of assessments that would be necessary at the old rate, to meet all the death lossess occurring between the time of his

suspension and the time of his death. In other words, the insured was liable for the number of assessments that were legally assessable at the old rate to pay all the death losses, and not merely for such as were legally assessed at the increased rate. If it were otherwise, as is contended by Wathen, he would never cease to be a member until his death, for the simple reason that after he ceased paying premiums and was suspended, he was not thereafter assessed, or treated as a member of the society. Under this view his surplus would have remained undiminished until his death and he would have remained insured without paying anything. It needs no argument to show that such a theory cannot be maintained, if the society is to continue business.

Applying this rule to this case, we find that when Wathen discontinued the payment of premiums in October, 1904, he had an excess in the hands of the company of $155.89 which should have been applied to the payment of all legal assessments that would have been necessary to pay the society's losses between October, 1904, and November, 1908, the date of his death, according to the constitution and laws of the society. And it was incumbent upon Wathen to allege those facts in his petition and sustain them by proof. He wholly failed to do either, and the answer does not supply the deficiency. On the contrary, the answer shows that between 1899 and 1904, when Wathen was suspended for the non-payment of premiums, the society made 131 assessments at a cost of $286.89 to the insured; and that at the original rate of $1.00 for each assessment it would have required 261 assessments, or $261.00, to pay the death losses of the society during that period; and consequently, that in 1904 Wathen would have had a surplus of only $25.89 to his credit. The answer further shows that for the remaining portion of the year 1904 and for the year 1905, 102 assessments at the old rate of $1.00 per assessment would have been required to pay the death losses of the society for those two years. It is true the answer goes no further than the year 1905 in showing these facts, but it is sufficient to show that by the end of 1905 Wathen's surplus would have been more than extinguished under the old rate; and he did not die until 1907.

Of course, the society ceased to make assessments against Wathen after his suspension in October, 1904; and, as stated above, the error in the original opinion is

found in the statement that Wathen was liable only for the assessments that were actually made against him. Of course, it would require twice as many assessments at $1.00 for each death, as it would if the assessments were $2.00 for each death. But the constitution and by-laws of the order authorized and required it to make a sufficient number of assessments to pay its death losses. And, as was stated in the Fenwick case, the burden was upon Wathen to show those facts. As the petition failed to make such a showing and it was not cured by the answer, the demurrer to the answer should have been carried back to the petition and sustained.

The petition for a rehearing is granted and the judgment is reversed for further proceedings consistent with this opinion. The whole court sitting.