Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff became a partner in the firm of Funch, Edye & Co. in September, 1916, at which time articles of co-partnership between parties in interest were executed. The firm was an old one and had conducted a profitable business for many years. Its business was that of representing foreign ship owners who had business in New York, looking after their ships’ interests, discharging the cargoes, and obtaining for them outward cargoes. It was very largely a *7 personal business that required a comparatively small capital, usually invested in seats in one or more of the exchanges, in furniture and some stock in steamship and other companies. The amount of this capital was $80,000. Two of the partners owned or controlled the business of the firm in the summer of 1916. It appears that the heirs or legal representatives of a deceased partner had some interest in the business, but just what it was does not definitely appear.
For the purposes of this case the business may be treated as belonging to the two surviving partners. In September, 1916, the plaintiff arid two other persons, all of whom had been for a long time employees of the firm, were admitted into the firm as copartners under articles of copartnership which defined the interests of each. Plaintiff agreed to contribute, as did each of the new partners, $8,000 in cash to the copartnership capital. The articles provided that at the option of the two original partners the business and assets of the partnership could be transferred to a corporation in consideration of its entire capital stock, of which plaintiff would be entitled to one-tenth. These two partners were also authorized to enter into an agreement for the sale of the capital stock of the corporation proposed to be organized for not less than $2,400,000. Subsequent to the making of this copartnership agreement another agreement was entered into between the Cunard Steamship Co. (Ltd.) and all the members constituting the firm of Funch, Edye & Co., and to which the widow and children of a former member of the firm were “ parties of the third part,” whereby the Cunard company agreed to purchase all of the capital stock of the corporation which the partners agreed to organize for the object and purpose of the acquisition by it of all the good will, business, and assets of the firm of Funch, Edye & Co., as a going concern and the continuation of its business.
The partners agreed to sell and deliver to the proposed corporation on or about January 1, 1917, the contracts and assets of the firm, representing capital invested and the good will pertaining to its business, the exclusive right of the corporation to. use. the firm’s name as a corporate title, and *8 to continue its business as a going concern as successors thereto. This agreement was finally consummated. Plaintiff, as the holder of ten per cent of the capital stock of the corporation, was entitled to receive $248,0.00 of the purchase price paid by the Cunard company for the entire capital stock, as stated. Upon this statement it is clear that plaintiff realized a profit which was taxable. He acquired an interest in the firm’s assets when he became a copartner, for which he paid $8,000. He sold that interest to a corporation for shares of its stock and then sold the stock. He did not receive all of the $248,000 at one time, but no question is made as to the amount he is liable for, if taxable’ at all. But plainly there was a taxable gain accruing to him out of the transaction as stated. The contention of plaintiff, however, is that he paid $8,000 for an interest in the “ hard assets ” or capital of the firm of Funch, Edye & Co., that the interest he acquired in the good will of the business was a gift to him from the two former partners in the firm, and being a gift was exempt under section 4 of the revenue act of 1916, 89 Stat. 156. The basis of this contention apparently is that the Cunard company agreed to purchase or did purchase the “ good will ” of the firm as an item distinct from the firm’s assets and business. The valuation arrived at was based upon the earnings of the firm for a number of years. These earnings grew out of the business of the firm because of its management and its activities. The new members admitted into the firm had been no doubt important factors in the development of that business. It was. desirable that they be continued with the firm if it was to continue as a growing concern.
What the Cunard company acquired was not merely the good will but the entire business of the firm, including all its assets and the right to use its name. The. contention that the good will was a separate item that was given a large value, and that the so-called hard assets, which, in fact, represented the firm’s tangible assets used in its business, were a thing apart from the good will, leads to a conclusion which can not be maintained. Its good will can not be thus carved out of a firm’s business and leave it a going concern. “ It is *9 tangible only as an incident, as connected with a going concern or business having locality or name and is not susceptible of being disposed of independently.” Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436, 446. When plaintiff became a partner he acquired an interest in the business of the firm and in its good will as an incident. These were not separate or separable from it as a going concern. Good will has been said to be intangible property, which in the nature of things can have no existence apart from a business of some sort that has been established and carried on at a particular place and that it can not be sold by judicial decree or otherwise unless it be in connection with a sale of the business on which it depends. See Metropolitan Bank v. St. Louis Dispatch Co., 36 Fed. 722, 724. The taking of two new members into the firm upon the terms of their paying a tenth of the valuation of the firm’s capital at $80,000, if that was the sole consideration, did not constitute in legal contemplation a gift to them of interest in the good will of the firm or its business. “When a partner retires from a firm, assenting to or acquiescing in the retention by the other partners of possession of the old place of business and the future conduct of the business by them under the old name, the good will remains with the latter as of course.” Menendez v. Holt, 128 U. S. 514, 522; Brown Chemical Co. v. Meyer, 139 U. S. 540. Having, as partners, acquired an interest in the firjaja_business Jby piircEase“EEey'acquired-at the same time as an incident an interest' in' whatever-pertainecTto” that business, including its good will.
While the foregoing disposes of the' case, it is deemed proper to refer to a contention of the Government that a determination of the “ taxable gain ” by the Commissioner of Internal Kevenue is conclusive “ at least to the extent that his determination of the question is an exercise of executive discretion.” The contention has been repeatedly made, and in the instant case goes to the extent that the commissioner’s conclusion upon the facts found by him is not to be questioned. This view is entirely without merit. It was thought to have been put at rest by the ruling of this court in the recent case of Sara Leavitt Meyer, 60 C. Cls. 474, decided *10 April 6, 1925, in which it is said that such a contention seems so clearly untenable as to obviate any need of discussion, and that to sustain it would be to deprive taxpayers of a right accorded them by statute and leave them without remedy where remedy is provided. The jurisdiction of the Court of Claims in such cases has been exercised for many years, as is attested by many decisions of this court and of the Supreme Court of the United States.
Replying to the argument for the Government that suits on account of taxes erroneously or illegally collected could only be brought against the collector, the Supreme Court says that it has become accepted law that such claims are “ founded upon ” the revenue law. The Court of Claims has jurisdiction of claims founded upon a law of Congress. (Sec. 145, Judicial Code.) In the case just referred to it is said by the Supreme Court: “ The argument that there is a distinction between claims £ arising under ’ (Judicial Code, §24 First) and those ‘ founded upon ’ (id. §24 Twentieth) a law of the United States, rests on the inadmissible premise that the great act of justice embodied in the jurisdiction of the Court of Claims is to be construed strictly and read with an adverse eye.” United States v. Emery et al., 237 U. S. 28, 32. When'the case is brought here the court must make its findings of facts as in other cases and the case is to be determined upon its merits. See Medbury case, 173 U. S. 492, 500; Singles case, 61 C. Cls. 433.
An expression by the court in a memorandum in the case of Texas Pacific Coal & Oil Co. v. United States, 59 C. Cls. 984, decided October 30, 1924, has apparently given rise to some misapprehension, because it is quoted as if it had some bearing on the finality of the commissioner’s ruling in the instant case. In the case mentioned a demurrer to the petition, based largely on the ground of a want of protest when the taxes were paid, was overruled, without prejudice, however, to the right to present the question again on the coming in of all the facts. In the memorandum following this ruling the court observed that it was “ inclined to the view that the commissioner’s findings in tax cases are conclusive as to the facts.” Nothing there said had any reference to his conclusions of law or deductions from the facts. This court *11 has jurisdiction in tax cases to find the facts and apply to them the law, and so far as the expression quoted can be supposed to qualify this unquestionable right and duty, it must be regarded as overruled.
The petition should be dismissed. And it is ordered.
Graham, Judge; Hat, Judge; Downet, Judge; and Booth, Judge, concur.