Joseph Garneau Co., Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 40. Promulgated October 29, 1927.

Deduction for obsolescence or loss of good will disallowed.
*Appeal of Manhattan Brewing Co.,* 6 B. T. A. 952; *Red Wing Malting Co.* v. *Willcuts,* 15 Fed. (2d) 626.

*George R. Beneman, Esq.,* and *Ferdinand Tannenbaum, Esq.,* for the petitioner.
*E. C. Lake, Esq.,* for the respondent.

Pursuant to the decision of the Board upon the preliminary motion as to jurisdiction (see 1 B. T. A. 75), this proceeding now comes on for consideration upon the merits. The petitioner seeks a redetermination of deficiencies in income and profits taxes asserted by the Commissioner for the years 1918 and 1919 in the respective amounts of $5,705.92 and $41,688.76. It is alleged that the Commissioner erred in failing to allow a deduction from gross income for the loss of good will and trade-mark assets, resulting from the adoption and enforcement of national prohibition.

The petitioner is a New York corporation with its principal place of business in New York City. It was incorporated prior to the taxable years and has been in business since 1856, but operated under a different name for a portion of the time.

Prior to January 16, 1920, the petitioner was engaged in the business of importing and selling wines and brandies for beverage purposes only. It dealt in special brands of wine, such as champagne, (particularly Cliquot), bordeaux, port, sherry, burgundy, and brandy. Over a period of years the petitioner built up a large business and succeeded in creating a demand for its brands of wine. It spent large sums of money in advertising and popularizing its goods. Its representatives visited leading hotels, clubs, and restaurants for the purpose of inducing the management of such establishments to list its wines. They mingled with people of means, acquainted them with its wines, and encouraged them to cultivate a taste particularly for its wines. A demand for petitioner's brands of wine had been created prior to and existed on March 1, 1913, and continued until the advent of national prohibition.

In December, 1917, the Congress submitted the proposed prohibition amendment to the Constitution to the States for ratification. On January 16, 1919, it had been ratified by the requisite number of States and became effective January 16, 1920, and on the same date the National Prohibition Act for the enforcement of the amendment became effective. The War-time Prohibition Act, passed in November, 1918, prohibited the manufacture, sale, importation and exportation of intoxicating liquors effective July 1, 1919. The petitioner terminated its business of importing and selling intoxicating liquors on June 30, 1919, and engaged in no business whatever until October, 1920.

In October, 1920, the petitioner, under a Government permit, began the importation of intoxicating liquors for nonbeverage purposes only, and the sale of warehouse receipts for the same, and is still engaged in such business. The liquors imported by petitioner since the prohibition law became operative have been stored in Government bonded warehouses, from which they are delivered to the purchasers of its warehouse receipts, upon Government permits. Of approximately 900 customers appearing on its books since prohibition became a law, only five were numbered among approximately 1,500 customers on its books prior to that date. Its business of dealing in nonbeverage liquors was limited to the sale of warehouse receipts to holders of Government permits, such as druggists, churches, and manufacturers. There was no demand for its par-

ticular brands of liquors, and the reputation and demand for special beverage liquors that had been built up and existed prior to January 16, 1920, did not contribute to its nonbeverage liquor business after that date. Prior to prohibition petitioner did not handle whiskey, but subsequent thereto whiskey has been the largest item of its business.

During the five years preceding 1913, the petitioner spent for advertising, the following sums:

| | | | |
|---|---|---|---|
| 1908 | $20, 877. 45 | 1911 | $19, 512. 92 |
| 1909 | 21, 044. 72 | 1912 | 17, 451. 86 |
| 1910 | 21, 516. 56 | | |

During the same period it spent the following additional sums in promoting and popularizing its particular brands of liquor:

| | | | |
|---|---|---|---|
| 1908 | $154, 179. 03 | 1911 | $245, 080. 12 |
| 1909 | 216, 031. 27 | 1912 | 272, 916. 11 |
| 1910 | 278, 241. 84 | | |

The capital and surplus employed in the business, as of January first of each of the five years preceding 1913, was:

| | | | |
|---|---|---|---|
| 1908 | $304, 672. 61 | 1911 | $363, 083. 46 |
| 1909 | 386, 469. 85 | 1912 | 483. 440. 88 |
| 1910 | 585, 540. 12 | | |

Of the capital and surplus for each of these years, there were credited to the accounts of the stockholders, in proportion to their stock holdings, pursuant to the regular declaration of dividends, and charged to surplus account, the following respective amounts, which were left in the business, but subject to withdrawal by the stockholders:

| | | | |
|---|---|---|---|
| 1908 | $189, 737. 24 | 1911 | $235, 828. 45 |
| 1909 | 259, 546. 12 | 1912 | 363, 821. 50 |
| 1910 | 449, 376. 07 | | |

As of January 1 for each of the years 1913 to 1917, inclusive, the capital and surplus employed in the business was:

| | | | |
|---|---|---|---|
| 1913 | $580, 784. 27 | 1916 | $293, 018. 19 |
| 1914 | 574, 092. 88 | 1917 | 341, 898. 86 |
| 1915 | 310, 313. 48 | | |

The net income for each of the five years preceding 1913 was:

| | | | |
|---|---|---|---|
| 1908 | $109, 123. 31 | 1911 | $174, 928. 51 |
| 1909 | 234, 913. 40 | 1912 | 71, 308. 28 |
| 1910 | 41, 571. 22 | | |

For each of the years 1913 to 1917, inclusive, the net income was:

| | | | |
|---|---|---|---|
| 1913 | $98, 437. 84 | 1916 | $247, 319. 65 |
| 1914 | 101, 789. 85 | 1917 | 121, 534. 51 |
| 1915 | 85, 177. 69 | | |

On and prior to March 1, 1913, the petitioner possessed a valuable good will asset, which continued until the termination on June 30, 1919, of its business of importing and selling intoxicating liquors for beverage purposes. No independent value of trade-marks was proven.

The national prohibition amendment to the Constitution and national prohibition legislation rendered the good will asset of no value to the petitioner after June 30, 1919.

OPINION.

VAN FOSSAN: The petitioner seeks a deduction from income for either the obsolescence of good will under section 234 (a) (7) or the loss of good will under section 234 (a) (4), due to the operation of the prohibition law in the United States. That good will is not property subject to obsolescence for which a deduction may be allowed under section 234 (a) (7) has been heretofore decided. *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952, and *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626.

Nor do we believe a deduction as a loss is allowable. Good will has been defined as—

> The advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity or even from ancient partialities or prejudices. *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, 446.

Good will, though constituting property, has no existence as an isolated or segregated capital asset. It is not tangible and does not exist, except as an incident of a going business. It is inherently part and parcel of a going and established business, and of tangible, physical property actively employed in business. It can not be separated from the business and property to which it is attached and be dealt with or disposed of separately. Its value is reflected in the value of the business and property of which it is an inseparable part, and can be realized only upon a sale of the business and property. It may be said to be nothing more than an element or factor of the value of the business and property. See *Metropolitan National Bank* v. *St. Louis Dispatch Co.*, 36 Fed. 722; *President Suspender Co.* v. *MacWilliam*, 238 Fed. 159; *Kaufman* v. *Kaufman*, 239 Pa. 42; 86 Atl. 634; *Commonwealth* v. *Kentucky Distilleries & Warehouse Co.*, 132 Ky. 521; 116 S. W. 766.

Good will being merely an incident of a going business, inseparably attached to tangible property and incapable of segregation and independent disposition, it is difficult to conceive upon what theory an allowance for the loss of its alleged value can be made as a deduction under section 234(a)(4), independently of the tangible property or business to which it is attached. If, and when, the business or property of which the good will is an incident, is disposed of, the gain derived or the loss sustained by reason of the value, or loss of value, of the good will must of necessity be reflected in the return received from the disposition of such business or property. In the instant case the business or property was not disposed of but was continued and in use, and although its value may have been materially reduced, due to the operation of the prohibition law, no deductible loss has been sustained by the petitioner. See *Frederick C. Renziehausen* v. *Commissioner*, 8 B. T. A. 87.

In the *Red Wing Malting Co.* case, although it did not squarely decide whether or not a deduction for the loss of good will is allowable under section 234(a)(4), the court indicated its view upon the question:

We have heretofore pointed out that good will has no existence separate and apart from an established business. With the termination of that business it is ended. While a capital asset, it is not the subject of purchase, sale, or assignment separate from the business itself. It is not an assignable asset distinct from the business. It is different in this respect from such intangibles as patents, contracts or franchises which may be sold. When a business is disposed of its value and realized selling price may be enhanced by the existence of good will. If sold at a loss, the loss of good will is reflected in the transaction. The claim is somewhat novel, therefore, and rather startling, that loss of good will can be made the subject of an independent claim for a tax deduction, separate and distinct from the business of which it is an incident. * * * To hold that a claimant is entitled to segregate good will from the property and business to which it is attached as an incident, and from which it is inseparable, and permit a separate deduction for its loss, might result in a double deduction and have far-reaching consequences. If the court is to open the door to claimants for tax deductions under the statute for the loss of good will apart from the tangible property with which it is connected, the right should clearly appear from the statute. We think it does not so appear. (15 Fed. (2d) 626, 633.)

We are of the opinion that petitioner was not entitled to a deduction from income either for the obsolescence of good will, under section 234(a)(7), or for the loss of good will, under section 234 (a)(4).

Reviewed by the Board.

*Judgment will be entered for the respondent.*