Red Salmon Canning Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 4146.   Promulgated March 11, 1929.

*Virgil Y. Moore, Esq., Andrew T. Smith, Esq.,* and *N. L. McLaren, Esq.,* for the petitioner.

*Brice Toole, Esq.,* for the respondent.

OPINION.

MILLIKEN: Section 327, Revenue Act of 1918, provides as follows:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. \*　\*　\*

It appears to us that the principal question to be considered in this case is that of the effect of the commandeering by the Government of approximately 80 per cent of petitioner's 1918 pack, and the subsequent release and sale thereof during 1919, in addition to its pack of that year, and the application thereto of subsection (d) of section 328.

The facts are simple and we believe speak for themselves. The invested capital determined for the year 1919 was $461,779.02 and so far as the record indicates was approximately the same during both the packing seasons of 1918 and 1919. For the season 1918 petitioner packed 92,168 cases, of which it sold 20,309 cases during that year, leaving on hand unsold, and subject to Government order, 71,859 cases. Its gross sales for that year were $257,846.15.

After the Armistice was signed, November 11, 1918, the United States released petitioner's 1918 pack, leaving it available for sale by petitioner during the year 1919.

In 1919 petitioner sold 70,566 cases left over from its 1918 commandeered pack, and in addition thereto packed 28,386 cases, of which it sold 26,177 cases that year. It thus appears that petitioner sold a total of 96,743 cases in 1919, of which 70,566 cases, or approximately 73 per cent, were produced in 1918 and under ordinary circumstances would have been disposed of during 1918.

The gross income for the year 1919 was $299,748, and net income, $187,298.48, and 73 per cent of each resulted from the activities of the petitioner during the prior year 1918. The gross sales for 1919 were $983,006.03, of which 73 per cent, amounting to $717,594.40, resulted from the 1918 season.

The United States was confronted with grave dangers in 1918 and in the emergency exercised its war powers for the purpose of obtaining supplies for its military forces and to control the supply of food for its civilian population. Conditions were abnormal and drastic powers were exercised to meet the situation. Thus it was that 80 per cent of petitioner's product for 1918 was commandeered and withdrawn from the market for that year. When it was released and sold in 1919 it more than tripled the gross sales, gross and net income of petitioner for that year, and this was a situation and condition resulting entirely from the action of the Government and for which the petitioner was in no way responsible and which it could not avoid.

Certainly this situation, resulting as it did in practically throwing two years income into the year 1919, was not one occurring in the ordinary course of business.

The business activities of petitioner for two years have been thrown into one year for the purpose of computing its excess-profits tax, but its credits have been calculated upon invested capital for but one year.

We had a somewhat analagous situation in *Pittsburgh Supply Co.*, 14 B. T. A. 620, where we said:

In 1921, petitioner recovered through various means $110,407.34 of an item of $111,949.31 charged off as a bad debt in 1920 and allowed as a deduction from 1920 income. The entire amount recovered was reported in 1921 income. When the charge-off was made in 1920 the cost of the goods shipped was

eliminated from petitioner's books, so that upon the recovery in 1921 the entire amount recovered was reported as income; there was no "cost of goods sold" which was deducted from the amount received as in the case of ordinary sales. Certainly this transaction can not be viewed as one in the ordinary course of business or as one likely to recur. The amount of petitioner's net income as determined by respondent is $109,906.84, or $500.50 less than the recovery on the bad debt of the prior year. In other words, but for the recovery of the item previously charged off, all of which went into income, the petitioner would have reported no net income in the taxable year. The net income for 1921 may therefore be said to be attributable to business activities of a prior year or years.

The evidence satisfies us of the existence of abnormalities sufficient to entitle petitioner to have its profits taxes computed under section 328.

See also *Grand Rapids Show Case Co.*, 12 B. T. A. 1024, where the income of the taxable years resulted from the activities of the taxpayer during former years, which was given as one of the reasons for granting special assessment.

It is further alleged by the petitioner that the respondent failed to include in invested capital the value of petitioner's brands and trade-marks, packing sites, and borrowed money.

We have no doubt that the brands and trade-marks were of considerable value to petitioner in its business, but it does not appear that anything was ever paid for them or that anything was ever paid in the way of advertising or otherwise as a capital expenditure to produce them.

A trade-mark or brand standing alone has no intrinsic value and can not be disassociated from the business to which it belongs. It is a name or sign which indicates or certifies that a given article of commerce is what it claims to be. It is a certificate of the truth. The property itself is valuable. It is the result of the labor or ingenuity or honesty of the owner or manufacturer and tells the purchaser that the goods are what he seeks. *Commissioner* v. *Kentucky Distilleries & Warehouse Co.*, 132 Ky. 521; 116 S.W. 766. It is akin to good will, and if nothing was paid therefor or in its development it can not be included in invested capital. *Providence Mill Supply Co.*, 2 B. T. A. 791.

Relative to the value of the canning sites, the respondent merely allowed the cost thereof appearing on petitioner's books. These sites were no doubt of much greater value and were necessary and essential to petitioner's business. By reason of the decision reached in this case and the nature of the evidence offered, we do not attempt to fix their 1919 value. Witnesses valued the sites at figures ranging from $75,000 to $150,000. We have held that where assets which were principal income-producing factors have been excluded from invested capital, or included at a nominal figure only, this may be considered as a reason entitling the taxpayer to special assessment. *Clarence*

*Whitman & Sons, Inc.,* 11 B. T. A. 1192; *Rothschild Colortype Co.,* 14 B. T. A. 718.

Section 326 (5) (b), Revenue Act of 1918, provides, "As used in this title, the term 'invested capital' does not include borrowed capital."

The large sums of money borrowed from the bank during 1919 through the personal endorsement of Peterson were properly excluded from invested capital, but in *G. M. Standifer Construction Corporation,* 4 B. T. A. 525, we held that, where borrowed capital was a large income-producing factor, its exclusion created an abnormality entitling the taxpayer to special assessment under section 328. The borrowed money here constituted a large part of petitioner's working capital and was essential to the success of the business.

On the whole case, and without determining the specific grounds to the exclusion of others, we think petitioner is entitled to special assessment under section 328.

> *Further proceedings will be had under Rule 62 (c) and (d).*