## RED WING MALTING CO. v. WILLCUTS, Collector of Internal Revenue.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1926.)

No. 7242.

**1. Statutes ⬅➡219.**

Courts have respect for and give weight to departmental construction of a statute, although such construction is not controlling.

**2. Statutes ⬅➡188.**

Statute should receive natural and not strained construction, and its plain, obvious, and rational meaning should be adhered to.

**3. Statutes ⬅➡245.**

Tax laws, if doubtful, are to be construed in favor of taxpayer.

**4. Good will ⬅➡1.**

"Good will" is property of intangible nature, and term "property" includes "good will."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Will; Property.]

**5. Good will ⬅➡5.**

Good will has no existence, except in connection with continuing business, and may be bought and sold in connection therewith.

**6. Internal revenue ⬅➡7(22)—Malting company may not deduct, under provision authorizing deduction for wear and tear, "including allowance for obsolescence," loss of good will resulting from being forced to discontinue business because of prohibition legislation (Revenue Act 1918, § 234 [a] [7], being Comp. St. § 6336⅛pp).**

Revenue Act 1918, § 234 (a) (7), being Comp. St. § 6336⅛pp, allowing deduction in computing income tax for wear and tear, "including reasonable allowance for obsolescence," held not to permit deduction for loss of good will of malting company, forced to discontinue business as result of prohibition legislation, since phrase "including reasonable allowance for obsolescence" is but an enlargement of previous phrase relating to wear and tear.

**7. Statutes ⬅➡188.**

Court must endeavor to arrive at meaning of statute from its language, and should not attempt to write new language therein.

**8. Good will ⚚⟹1.**

Good will is property of intangible nature, but differs from such intangibles as patents, copyrights, licenses, and franchises, as not being subject to depreciation.

**9. Internal revenue ⚚⟹7(19)—Loss of good will cannot be basis for "income tax reduction, in absence of showing that such loss was not reflected in general loss resulting from sale of property for depreciated value (Revenue Act 1918, § 234 [a] [4], being Comp. St. § 6336⅛pp).**

Loss of good will of malting company as result of prohibition cannot be a basis for deduction of income tax under Revenue Act 1918, § 234 (a) (4), being Comp. St. § 6336⅛pp, in absence of showing that such loss was not reflected in general loss resulting from sale of property for depreciated value.

**10. Internal revenue ⚚⟹38(7).**

Application for refund of alleged excessive tax is condition precedent to jurisdiction of court.

**11. Internal revenue ⚚⟹38(1).**

Recovery of excess tax cannot be based on entirely different and distinct ground from that stated in application to Commissioner of Internal Revenue.

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Action by the Red Wing Malting Company against Levi M. Willcuts, Commissioner of Internal Revenue for the District of Minnesota. Judgment for defendant (8 F.[2d] 180), and plaintiff brings error. Affirmed.

William H. Oppenheimer, of St. Paul, Minn. (Frederick N. Dickson, Frank C. Hodgson, Montreville J. Brown, and Stan D. Donnelly, all of St. Paul, Minn., on the brief), for plaintiff in error.

Floyd F. Toomey, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C. (Lafayette French, Jr., U. S. Atty., and L. W. Scott, Asst. U. S. Atty., both of St. Paul, Minn., and A. W. Gregg, Solicitor of Internal Revenue, of Washington, D. C., on the brief), for defendant in error.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and John B. SANBORN, District Judge.

KENYON, Circuit Judge. This is an action brought by the Red Wing Malting Company, a corporation, plaintiff in error (designated for convenience as plaintiff), against Levi M. Willcuts, collector of internal revenue for the district of Minnesota, defendant in error (designated for convenience as defendant), for the recovery of $29,893.44, income and profits taxes alleged to have been erroneously assessed for the fiscal year ending August 31, 1918, and which were paid by plaintiff.

Plaintiff, prior to the advent of prohibition, was engaged in the business of manufacturing barley malt and selling the same to brewers engaged in the manufacture of fermented malt liquors. That was its sole business. Its market was destroyed as a result of the Prohibition Amendment and the acts of Congress relating to the manufacture and sale of intoxicating liquors. There is no dispute as to the facts. We set forth a number of the court's findings thereon, as follows:

"That on March 1, 1913, the plaintiff had built up a large and profitable business and had a good will of large value. That at said date, namely, March 1, 1913, the good will of the plaintiff's business was worth the sum of $153,618.75.

"11. That, by reason of the acts of Congress and the presidental proclamations thereunder, the business and trade of plaintiff, built up over a number of years, was totally destroyed, for, although the plaintiff still had the right to manufacture its malt, its customers were, by said acts of Congress and presidential proclamations thereunder, all put out of business and prohibited by law from using the products of this plaintiff. That as a result of this action the market for plaintiff's products was wholly destroyed, and as a result plaintiff closed its plant and ceased all manufacturing operations in May, 1918. That in December, 1918, plaintiff sold its plant, including its real estate, machinery, and equipment, to the Fleischmann Yeast Company under a contract, for $150,000.

"12. That, as plaintiff was forced out of business by reason of the foregoing facts, the good will of said business went with it and ceased to be."

For the fiscal year ending August 31, 1918, the Commissioner of Internal Revenue determined plaintiff's taxable net income to be $120,536.42. Plaintiff claims that in arriving at its taxable net income for said fiscal year a deduction for obsolescence of good will in the sum of $153,618.75, being the entire March 1, 1913, agreed value of its good will, should have been deducted. This would have left no taxable income for that year. Plaintiff seeks to recover the total income and profits taxes paid by it for said year.

The District Court held against the contention of the plaintiff, and from that holding this writ of error is prosecuted. The issue presented is a narrow and precise one, viz.: Is plaintiff, in computing its taxable net income for the fiscal year ending August 31,

1918, entitled to a deduction on account of obsolescence or loss of good will? The statute involved is the Revenue Act of 1918 (40 Stat. 1057, 1077). The particular portions thereof are parts of section 234 (a), being Comp. St. § 6336⅛pp, reading as follows:

"That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \*

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;

\* \* \* \* \*

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

It is the theory of plaintiff that the phrase in subsection (7) of said statute, "including a reasonable allowance for obsolescence," created a new and additional tax deduction to the "exhaustion, wear, and tear" clause of said subsection.

It is the contention of defendant that an allowance for obsolescence under the statute is merely supplementary to the allowance for "exhaustion, wear and tear," in those cases where by reason of economic circumstances the allowance for "exhaustion, wear and tear," based upon the estimated normal period of utility, would be insufficient to restore to the taxpayer the cost of the capital investment; that the allowance for obsolescence applies only to property of a depreciable character. It will thus be seen that the matter presented raises legal questions of far-reaching importance.

Plaintiff contends that the Treasury Department has established an interpretation of the various acts relating to depreciation for the purpose of arriving at taxable income through office decisions, Treasury decisions, an advisory tax board, and the committee on appeals and review, and that such construction has been that obsolescence of intangible property is permissible as a deduction in arriving at taxable income.

Article 163 of Regulations 45, promulgated by the Treasury Department, construing the Revenue Act of 1918, is as follows:

"*Depreciation of Intangible Property.*— Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the commissioner. There can be no such allowance in respect of good will, trade-names, trade-marks, trade brands, secret formulæ, or processes."

This would seem to indicate the attitude of the Treasury Department at that time. It is true that, after the promulgation of this Regulation, the Internal Revenue Bureau recognized for a time at least deductions for obsolescence of good will, the taxpayer having the burden of proving the beginning and end of the claimed obsolescence period. The deduction for good will was recognized only where it was assignable, as distinguished from good will attached to the owning or carrying on of the business, or connected with the premises on which the business was conducted. No allowance for good will was recognized, where it would be valuable in another business after the termination of the business in which the taxpayer was engaged.

The case of Rock Spring Distilling Company, 2 Board of Tax Appeals, Decision No. 207, was a case considering somewhat the question of obsolescence of good will, and the board held there was no such thing under the Revenue Act of 1916 (39 Stat. 756). It does not decide that such deduction was permissible under the Act of 1918. We have been unable to find any decision of the board of tax appeals passing directly upon the question of whether, under the act of 1918, a deduction could be allowed for obsolescence of good will.

In the decision on the appeal of the Brevoort Hotel Company Case before the committee on appeal and review, and in its holdings as to hotels operating bars, there is language justifying the claim that a good will value may be established, for the loss of which an allowance for obsolescence may be made as distinct from the good will of the hotel. In the hotel cases may be noted the following language of the opinion: "It is therefore held that hotels, which can establish a good will, value which might have been assigned separate and distinct from the good will of the hotel, are entitled to obsolescence for the loss of their good will due to national prohibition legislation."

We have examined the references in the brief of plaintiff to the Cumulative Bulletins

of the Treasury Department, and the tax rulings contained therein bearing on this question, the holdings of the committee on appeal and review, and the decisions of the tax appeals board, and conclude that either side to this controversy may find some comfort therein.

[1] Courts have respect for and give weight to departmental construction of a statute, although such construction is not controlling. 22 Cyc. 1606; Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428. Certainly, however, there has been no such consistent and uniform construction of the statute in question as to be persuasive with the court or of appreciable assistance. Nor do we see much force in the claim that Congress has re-enacted in 1921, 1924 (Comp. St. § 6336⅛pp), and 1926 (44 Stat. 42) the section under consideration substantially as in the act of 1918, and thereby has acquiesced in the interpretation by the Treasury Department of the congressional intent as to obsolescence of good will as a tax deduction entity. There is no decision of the Treasury Department construing the act of 1918 as authorizing a deduction for obsolescence of good will as a separate and distinct entity, nor is there any such definite and uniform construction of provisions in other statutes to warrant a conclusion that Congress was adopting any particular construction of the Treasury Department. The very claim here was denied by the committee on appeals and review. It may as well be argued, therefore, that Congress, in re-enacting the section after such action of the Treasury Department, has adopted its conclusion. Further, the revenue act of 1926 containing section 234 (a) (7), in substantially the same form as in the Revenue Act of 1918, was enacted after the decision of the lower court in the case at bar. Therefore, if there was a practice of the Treasury Department relied on in conflict with said decision, there would be no substance in the claim that Congress had ratified, by passing the Revenue Act of 1926, the practice of the Bureau.

We content ourselves with saying that in the confusion of rulings of the solicitors of the Treasury Department and the various boards created therein to pass on tax questions, or the decisions of the board of tax appeals, no long-continued and uniform construction of the statute here involved can be found. Therefore we pretermit this phase of the matter, calling attention to the language of the Supreme Court of the United States in Iselin v. United States, 270 U. S. 245, 251, 46 S. Ct. 248, 250 (70 L. Ed. 566): "It suggests that these facts imply legislative recognition and approval of the executive construction of the statute. But the construction was neither uniform, general, nor long-continued; neither is the statute ambiguous. Such departmental construction cannot be given the force and effect of law. Compare United States v. G. Falk & Brother, 204 U. S. 143, 27 S. Ct. 191, 51 L. Ed. 411; National Lead Co. v. United States, 252 U. S. 140, 146, 40 S. Ct. 237, 64 L. Ed. 496."

The only case cited or that we have been able to find which bears directly on the question at issue is Haberle Crystal Springs Brewing Co. v. Jesse W. Clark, Collector of Internal Revenue. A referee's opinion therein construes the statute as contended for by plaintiff. It is of note that the opinion of said referee has not as yet been adopted by the United States District Court of the Northern District of New York, where the case is pending. The case of Kentucky Tobacco Products Co. v. Lucas, Collector of Internal Revenue (D. C.) 5 F.(2d) 723, refers to the statute in question, but does not discuss the proposition here raised.

We are satisfied this case is one of first impression, and the question is squarely before this court as to the construction of subsection (7) of section 234 (a) of the Revenue Act of 1918. Some legal propositions argued are assumedly beyond controversy; e. g.:

[2] (a) A statute should receive a natural, and not a strained, construction, and its plain, obvious, and rational meaning should be adhered to. Lynch v. Alworth-Stephens Co. (C. C. A.) 294 F. 190.

[3] (b) Tax laws, if doubtful, are to be construed in favor of the taxpayer. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547.

(c) The term "property," in the act under consideration, is not used in a restricted sense. Lynch, Executrix, etc., v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660.

[4] (d) Good will is property of an intangible nature, and the term "property" includes good will. 28 Corpus Juris, 730; Metropolitan Bank v. St. Louis Despatch Co., 149 U. S. 436, 13 S. Ct. 944, 37 L. Ed. 799; Coca-Cola Bottling Co. v. Coca-Cola Co. (D. C.) 269 F. 796; Washburn v. National Wall-Paper Co. et al., 81 F. 17, 26 C. C. A. 312.

[5] (e) Good will has no existence, except in connection with a continuing business. Kaufmann v. Kaufmann, 239 Pa. 42, 86 A. 634; Metropolitan Nat. Bank v. St. Louis Dispatch Co. et al. (C. C.) 36 F. 722.

(f) It may be bought and sold in connection therewith as an incident thereof. Camden v. Stuart, 144 U. S. 104, 12 S. Ct. 585, 36 L. Ed. 363; Coca-Cola Bottling Co. v. Coca-Cola Co. (D. C.) 269 F. 797, 805; Commonwealth v. Kentucky Distilleries & Warehouse Co., 132 Ky. 521, 116 S. W. 766, 21 L. R. A. (N. S.) 30, 136 Am. St. Rep. 186, 18 Ann. Cas. 1156; Sawilowsky v. Brown (C. C. A.) 288 F. 533.

[6] With these general propositions in mind, we proceed to a discussion of the statute in question. No difficulty arises as to the first part of subsection (7) of section 234 (a), "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business." That is clear enough as defining the deduction. The controversy is over the part of the subsection following these words, viz. "including a reasonable allowance for obsolescence." Does this provide for a new, distinct deduction, or is it so attached and related to the previous phrase in subdivision (7) that it applies only to such property used in the business as is subject to exhaustion, wear, and tear?

The case relied on by plaintiff is Haberle Crystal Springs Brewing Co. v. Clarke, Collector of Internal Revenue (heretofore referred to) in the United States District Court, Northern District of New York, and the opinion of the Referee in said case is attached as an appendix to plaintiff's brief. Plaintiff there claimed it was entitled under the 1918 statute to a reasonable allowance for the obsolescence of its good will, liquor licenses, and national plant, for which items no deductions were allowed in the computation of the tax which the plaintiff paid, and the referee there held that good will was property used in the business, within the meaning of subsection (7) of section 234 (a) of the Revenue Act of 1918, and that the purpose of the language of the statute as to allowance for obsolescence was to create a new and additional deduction. The position taken by the referee is presented with clearness and fortified by substantial reasoning, and states that theory of construction as well, we think, as it can be done.

We are, however, unable to reach the same conclusion. If it had been intended by the Congress to create a new and additional deduction not connected with property used in the business subject to "exhaustion, wear and tear," it would have been very easy for Congress, instead of using the word "including," to have said, "a reasonable allowance for exhaustion, wear and tear and obsolescence of property used in the business." That would have made the matter clear.

[7] The first part of the subsection provides for a deduction in arriving at tax income for the depreciation by exhaustion, wear, and tear of property used in the business. Depreciation was the matter sought to be remedied in order to restore to the owner the basis of original value. It is perfectly apparent that an allowance for depreciation due to exhaustion, wear, and tear of property might not sufficiently provide for the restoration of capital over the period of useful life of an asset, and it might be entirely inadequate to effect restoration of the March 1, 1913, value thereof. The meaning of the word "including," as used in the statute, is important. It evidently refers to the preceding part of the subsection, and must be recognized as occupying a significant and important place. It cannot be brushed aside and ignored. This court should not attempt to write new language into the statute, nor ignore language there used, but must endeavor, from the language of the statute itself, to arrive at the meaning of the Congress. This word has received considerable discussion in opinions of the courts. It has been productive of much controversy.

The word "include" is defined in the New Standard Dictionary as follows: "(1) To comprise, comprehend or to embrace as a component part, item or member; as, this volume includes all his works; the bill includes his last purchase; (2) to inclose within; contain; confine; as, an oyster shell sometimes includes a pearl."

It is defined by Webster as follows: "To comprehend or comprise, as a genus of the species, the whole a part, an argument or reason the inference; to take or reckon in; to contain; embrace; as, this volume includes the essays; to and including the tenth.".

The Century Dictionary defines "including" thus: "To comprise as a part."

Perhaps the most interesting discussion of the word "including" is found in Montello Salt Co. v. State of Utah, 221 U. S. 452, 31 S. Ct. 706, 55 L. Ed. 810, Ann. Cas. 1912D, 633. There the court referred to and discussed some of the cases where the word "including" had been under consideration. For instance, the court pointed out in Brainard v. Darling, 132 Mass. 218, that a legacy of $100, "including money trusteed at a certain bank," could not be construed as meaning that the sum of $100 was in addition to the sum in bank. Also in Henry's Executor v. Henry's

Executor, 81 Ky. 342, "a bequest of $14,000, 'including certain notes,' was held to mean that the notes formed a part of the $14,000, and were not in addition thereto." Also the case of Neher v. McCook County, 11 S. D. 422, 78 N. W. 998, where "it was held that a certain section of the laws of the state, which provided that the sheriff's fees should be $16 for summoning a jury, 'including mileage,' did not entitle him to mileage in addition to the $16." And the Supreme Court, after its reference to these cases, says of the case before it: "The court also considered that the word 'including' was used as a word of enlargement, the learned court being of opinion that such was its ordinary sense. With this we cannot concur. It is its exceptional sense, as the dictionaries and cases indicate. We may concede to 'and' the additive power attributed to it." We refer to a few other cases.

In Sullivan Machinery Co. v. United States (C. C.) 168 F. 561, the word "including," used in the Tariff Act (30 Stat. 197), was construed as a word of addition. In Maben v. Rosser, 24 Okl. 588, 593, 103 P. 674, 676, the court, discussing the meaning of the word "including," says: "This word has also been defined as having an accumulative sense, and as classing that which follows with that which has gone before."

In Kennedy v. Industrial Accident Commission of California et al., 50 Cal. App. 184, 194, 195 P. 267, 271, the court says: " 'Including' is not a word of limitation. Rather it is a word of enlargement, and in ordinary signification implies that something else has been given beyond the general language that precedes it. * * * As here employed, the word 'including' is used to express the idea that the specific power to review, grant or regrant, diminish, increase, or terminate an award, upon the ground that the disability has recurred, increased, diminished, or terminated—a particular power specifically referred to in the section of the present act— is but a part of the larger and more comprehensive power conferred by the more general language of the immediately preceding clause of the section."

In Dumas v. Boulin (La.) McGloin, 274, 278, it is pointed out that the word "include" has two shades of meaning. The court says: " 'Include' * * * has * * * two shades of * * * meaning. It may apply where that which is affected is the only thing included, * * * and it is also used to express the idea, that the thing in question constitutes a part only of the contents of some other thing." It is more commonly used in the latter sense.

That the word "includes" is a word of enlargement is held in Fraser v. Bentel et al., 161 Cal. 390, 119 P. 509, Ann. Cas. 1913B, 1062; Cooper v. Stinson, 5 Minn. 522; Calhoun v. Memphis & P. R. Co., 4 Fed. Cas. 1045, No. 2309.

Perhaps the most lucid statement the books afford on the subject is in Blanck et al. v. Pioneer Mining Co. et al., 93 Wash. 26, 30, 159 P. 1077, 1079, namely: "The word 'including' is a term of enlargement and not a term of limitation, and necessarily implies that something is intended to be embraced in the permitted deductions beyond the general language which precedes it. But, granting that the word 'including' is a term of enlargement, it is clear that it only performs that office by introducing the specific elements constituting the enlargement. It thus, and thus only, enlarges the otherwise more limited preceding general language. * * * The word 'including' introduces an enlarging definition of the preceding general words, 'actual cost of the labor,' thus of necessity excluding the idea of a further enlargement than that furnished by the enlarging clause so introduced. When read in its immediate context, as on all authority it must be read, the word 'including' is obviously used in the sense of its synonyms 'comprising; comprehending; embracing.' "

It seems to us that the language "including a reasonable allowance for obsolescence" is but a part of and an enlargement of the previous phrase of the said subsection (7) relating to exhaustion, wear, and tear, and that the first part of the sentence was intended to cover the subject-matter thereof. It does not add a new kind of deduction, but merely permits the inclusion of an additional element, namely, obsolescence of such property used in the business as is subject to exhaustion, wear, and tear. The allowance for obsolescence was intended to be in connection with the allowance for exhaustion, wear, and tear; that being at times insufficient to restore the proper basis of capital values.

The history leading up to the enactment of subsection (7) of section 234 (a) of the 1918 act is important. The Excise Tax Act of 1909 (36 Stat. 112) § 38, permitted deduction of "a reasonable allowance for depreciation of property, if any." Regulations of the Treasury Department provided that the deduction should be the loss "that arises from exhaustion, wear and tear, or obsolescence out of the uses to which the property is put."

The United States District Court for the Northern District of California, in San Francisco & P. S. S. Co. v. Scott, Collector, 253 F. 854, 855, discussed depreciation as used in that statute, and said: "It is intended to cover the estimated lessening in value of the original property, if any, due to wear and tear, decay, or gradual decline from natural causes, inadequacy, obsolescence, etc., which at some time in the future will require the abandonment or replacement of the property, in spite of ordinary current repairs."

The Revenue Act of 1913 (38 Stat. 172) had this provision: "A reasonable allowance for depreciation by use, wear and tear of property, if any." The regulations under this act recognized the interpretation put upon the word "depreciation" under the previous act, and made an allowance for obsolescence "out of the uses to which the property is put."

The 1916 act (Comp. St. § 6336f) dropped the word "depreciation," and the deduction permitted was "a reasonable allowance for the exhaustion, wear and tear of property within the United States arising out of its use or employment in the business or trade." After that there was no basis for a deduction for obsolescence, as the depreciation deduction under the 1916 act excluded obsolescence.

When the Revenue Act of 1918 was before the Congress, the House wrote a provision the same as in the 1916 and 1917 acts, providing an allowance for "exhaustion, wear and tear" of property. The Senate adopted an amendment substituting the word "depreciation" for "exhaustion, wear and tear." In conference, the word "depreciation" was stricken out, the words "exhaustion, wear and tear," restored, and the words "including a reasonable allowance for obsolescence" included. In this form the bill passed.

It would seem quite apparent, therefore, that Congress was not intending to add a new and independent deduction. It was merely trying to provide the restoration of capital value of a depreciable asset over the period of its useful life by allowing something, known as obsolescence, as an additional element to exhaustion, wear, and tear. This legislative history sustains, we think, the conclusion to which we are forced that the phrase "including a reasonable allowance for obsolescence" is one of specification and enlargement; that it is closely connected with and relates to the subject-matter of the other phrase of said subsection (7), and applies only to such property therein designated used in the business as is subject to exhaustion, wear, and tear.

[8] That leads to the query, is good will such property? Good will is property of an intangible nature. It differs from such intangibles as patents, copyrights, licenses, and franchises, because, while in a certain sense it inheres in and is used in the business, it is not subject to depreciation, as that term is commonly understood and commonly used in the statutes. The Supreme Court of the United States in Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436, 446, 13 S. Ct. 944, 947 (37 L. Ed. 799) says:

"Undoubtedly, good will is in many cases a valuable thing, although there is difficulty in deciding accurately what is included under the term. It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently. Mr. Justice Story defined good will to be 'the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices.' Story, Part. § 99."

The opinion of the referee in the case hereinbefore referred to, relied upon by plaintiff, of Haberle Crystal Springs Brewing Co. v. Jesse W. Clarke, Collector of Internal Revenue, so holds, because the referee says: "Ordinarily it has an indefinite existence and value."

Opinions of expert accountants are not without value in considering the peculiar nature and status of good will in business. In Montgomery's Auditing Theory and Practice, we find the following enlightening paragraph:

"This asset is in a class by itself. The question of depreciation certainly cannot be applied to it as to other items. If earnings decline for any reason, the value of good will declines correspondingly, because by its very nature its value depends on earnings of a certain amount being maintained. Good will, however, always appears, or should appear, on the balance sheet as a separate item, and well-established practice permits it to appear at cost, irrespective of fluctuations which affect its value. As a matter of fact, its actual

value changes from day to day, and there would be so much uncertainty in any attempt to adjust its book value that by common consent it is left alone, except in cases where earnings are unusually large, and it is considered advisable to write it off. In such cases, the very fact of there being sufficient earnings to write it off would justify its retention; whereas earnings not up to expectations, and insufficient to enable a concern to write it off, would indicate that its book value is inflated. As good will does not suffer wear and tear, does not become obsolescent, is not used up in the operation of the business, depreciation, as such, cannot be charged against it. * * * While good will does not depreciate, it is constantly liable to fluctuations. Good will is not usually written off, and the question of the amount at which it shall stand in the balance sheet was not formerly deemed to be within the scope of the auditor's work, but the present range of an auditor's duties compels him to give serious thought to this item."

In Higher Accountancy Principles and Practice (under supervision of William Arthur Chase) the following:

"The increased or decreased value of the good will does not show in any ordinary profit and loss account. Its growth cannot be attributed to any particular year. In a private concern, good will is only ascertainable by actually selling the business. In case of a public company, the good will is known from day to day. The whole question of good will is a difficult one, because each case stands by itself."

From Modern Accounting, by Henry Rand Hatfield:

"But in valuing good will for the inventory the limitation of its value to its cost must be most rigorously observed. It has been seen that the restriction of inventory value to cost price is of rather general application, but its force is much greater when the goods to be valued are immaterial. No one would object to the inclusion in the inventory of treasure trove, even though it cost the finder nothing. But good will is rigorously excluded, unless it has been secured at a cost. Hence it is recognized as legitimate for the purchaser of good will to include it among his assets, but accounting practice prudently, though perhaps illogically, forbids the firm which created the good will to place in the balance sheet any value on the clientèle which it has built up, and which it could at any moment sell for a large sum."

[9] We are satisfied there can be no wear or

tear of good will, or exhaustion thereof by use, and, even should we assume that good will, separate and distinct from tangible property, is property used in the business, section 234 (a), subsection (7), of the 1918 Revenue Act limits the allowance for obsolescence to such property as is susceptible to exhaustion, wear, and tear by use in the business, and good will is not such property.

We turn, therefore, to the question of whether the allowance claimed can be made under section 234 (a), subsection (4). It is suggested in the reply brief of plaintiff that, if defendant's argument be conceded to be correct as to the obsolescence feature of the statute, this court could decide the case under the loss section, section 234 (a), subsection (4), hereinbefore set out, and it is claimed that under the pleadings the requested allowance could be granted under that subsection as a loss sustained in plaintiff's fiscal year ending August 31, 1918.

Defendant in its brief states: "Plaintiff and defendant agree that, unless a deduction for obsolescence of good will is authorized by section 234 (a) (7) of the act, plaintiff's claim must of necessity be denied." Apparently this statement is incorrect. However, the case was tried and determined principally upon the question of the construction of section 234 (a), subsection (7). We refer to this suggested proposition briefly.

We have heretofore pointed out that good will has no existence separate and apart from an established business. With the termination of that business it is ended. While a capital asset, it is not the subject of purchase, sale, or assignment separate from the business itself. It is not an assignable asset distinct from the business. It is different in this respect from such intangibles as patents, contracts or franchises which may be sold. When a business is disposed of, its value and realized selling price may be enhanced by the existence of good will. If sold at a loss, the loss of good will is reflected in the transaction. The claim is somewhat novel, therefore, and rather startling, that loss of good will can be made the subject of an independent claim for a tax deduction, separate and distinct from the business of which it is an incident. [10,11] When the property of the Red Wing Malting Company was sold at a depreciated value by reason of prohibition, the loss of good will was reflected in the general loss. This loss might possibly be a basis for a deduction under section 234(a), subsection (4), of the statute. We are not advised whether or not such allowance has been made. To

hold that a claimant is entitled to segregate good will from the property and business to which it is attached as an incident, and from which it is inseparable, and permit a separate deduction for its loss, might result in a double deduction and have far-reaching consequences. If the court is to open the door to claimants for tax deductions under the statute for the loss of good will apart from the tangible property with which it is connected, the right should clearly appear from the statute. We think it does not so appear.

While we have indicated our view of the matter, we are not confident that this question is before us. It does not appear from the record that any claim under subsection (4) for refund covering the loss of good will as a sustained loss during the taxable year was presented to the Commissioner of Internal Revenue prior to bringing this action, and a refund requested. The application for refund does not appear in the record. Such application is a condition precedent to the jurisdiction of this court in matters of this character. The precise ground upon which the refund is demanded must be stated in the application to the Commissioner, and we think, if that is not done, a party cannot base a recovery in the court upon an entirely different and distinct ground from that presented to the Commissioner.

We have reached the conclusion that the action of the trial court in dismissing plaintiff's petition and rendering judgment for defendant was correct, and the same is affirmed.