## STUTZ MOTOR CAR CO. OF AMERICA, Inc., v. UNITED STATES.

### No. 8937.

Dstrict Court, S. D. Indiana, Indianapolis Division.

July 18, 1936.

John E. Hughes, of Chicago, Ill., and Frank C. Olive, of Indianapolis, Ind., for plaintiff.

Val Nolan, U. S. Atty., of Indianapolis, Ind.

BALTZELL, District Judge.

The Stutz Motor Car Company of America, Inc. (hereinafter referred to as the plaintiff), was incorporated under the laws of New York on June 22, 1916. On the same date plaintiff sold to Allan A. Ryan & Co., for $1,125,000, all of its authorized capital stock consisting of 75,000 shares of common stock, no par value. The money received from this sale was used by plaintiff to purchase all of the capital stock of the Stutz Motor Car Company of Indiana (hereinafter referred to as the Indiana Company), consisting of 1,000 shares of an aggregate par value of $100,000; such purchase being on the same day as the sale of plaintiff's stock to Ryan & Co. The Indiana Company was an Indiana corporation and was engaged in the business of manufacturing and selling automobiles and parts.

The Indiana Company, as the wholly owned subsidiary of plaintiff; continued its manufacturing operations until June 20, 1917, at which time it ceased all business operations, transferred all of its assets to plaintiff by way of liquidating dividend, and took appropriate action to dissolve under the Indiana laws. The final dissolution certificate was issued by the Secretary of State of Indiana on September 14, 1917. The liquidating dividend by which plaintiff's subsidiary transferred all of its assets to its parent company, on June 20, 1917, resulted in the surrender and cancellation of the entire capital stock of the Indiana Company, and thereafter plaintiff became the operating company. The Indiana Company wholly ceased to function on June 20, 1917, except to complete its dissolution in accordance with the laws of the State under which it was incorporated.

On April 22, 1918, plaintiff filed with the collector of internal revenue at Indianapolis a consolidated return for plaintiff and its wholly owned subsidiary, covering the entire calendar year of 1917. Such return was accepted by the Commissioner of Internal Revenue, and was the only return ever filed by plaintiff, or its subsidiary, for that year. Both the plaintiff and Commissioner in all their subsequent dealings treated such return as being the only return required to be filed by plaintiff, or its subsidiary, under the 1917 Revenue Act (40 Stat. 300), and as the only return upon which plaintiff's 1917 income and excess profit taxes should be computed. The return, as filed, was examined and checked by the field examiner, who found and re-

ported to the Indianapolis revenue agent in charge that the consolidated invested capital claimed by plaintiff was greatly in excess of the correct amount of the consolidated invested capital upon which plaintiff's 1917 excess profit tax allowance should be computed.

In an effort to establish the correct tax liability of plaintiff under its 1917 consolidated return, it subsequently filed with the Commissioner a number of protests or briefs. The primary object of such protests was to present to the Commissioner the right of plaintiff to have its 1917 consolidated invested capital increased over the amount recommended in the field examiner's report on the consolidated return for that year. The controversy between plaintiff and the Commissioner was solely as to amount of plaintiff's consolidated invested capital for the year 1917. The Commissioner fixed the amount thereof at $1,699,-367.30, which resulted in a substantial increase in the income and profit taxes owing under plaintiff's 1917 consolidated return. Upon this basis, an income and profit tax of $460,885.01 was assessed against plaintiff, which amount was paid, in two installments, viz., $380,206.93 on June 28, 1918, and $80,678.08 on October 30, 1919.

On February 9, 1924, plaintiff filed a claim for refund, alleging an overpayment of $350,000 in its income and profit taxes account under its 1917 consolidated return. The question presented by plaintiff in its claim for refund was as to the amount of its consolidated invested capital. It was the contention of plaintiff, in its claim and in its briefs filed in support thereof, that the amount of its consolidated invested capital was greatly in excess of $1,699,367.-30, the amount theretofore fixed by the Commissioner, whether computed by the usual method provided in the 1917 Revenue Act, or under the so-called "Relief" provisions contained in section 210 of the act (40 Stat. 307). In its claim for refund, the basis therefor and the question which was presented for the Commissioner's decision are stated by plaintiff as follows:

"This Claim covering the years 1917 and 1918 is based upon a petition for assessment under the provisions of section 210 and sections 327 and 328 of the Revenue Acts of 1917 and 1918 respectively [40 Stat. 307, 1093].

"The grounds on which our petition for relief is based are specifically set forth in an Appeal filed May 7, 1923 covering the year 1917. This appeal was taken from the action of the Income Tax Unit as shown in A–2 letter dated Feb. 9, 1923. Symbols IT:SA:CR:A:LST."

The appeal of May 7, 1923, to which the attention of the Commissioner was directed in plaintiff's claim for refund, requested him to rule upon the following propositions asserted by plaintiff:

"We respectfully request, that the value of Invested Capital as at date of transfer (June 22, 1916) be computed as follows:

| | |
|---|---:|
| Tangible Assets acquired with Cash | $ 566,571.62 |
| Good Will acquired with Cash | 558,428.38 |
| Total Cash paid | $1,125,000.00 |
| Good Will purchased with stock; 37,500 shares no par value worth $16.48 per share ($618,263.62÷37,500) | 618,263.62 |
| | $1,743,262.62 |

"The taxpayer is informed and therefore alleges that such tax is in excess of that paid by other representative concerns in the same line of business with which taxpayer is fairly comparable, and therefore petitions that his tax for 1917 be assessed and determined under the provisions of section 210 of the Revenue Act of 1917 and to predicate such petition upon the following specific facts and reasons:

"1st, the great disproportion between the tax computed without the benefit of this Section and the tax computed by reference to other representative concerns.

"2nd, the failure of the books and account to disclose the taxpayer's true invested capital.

"3rd, the realization in the taxable year 1917 of the fruits of activity antedating that taxable period."

The Commissioner was not requested by plaintiff's claim for refund, or otherwise, to consider or rule on either of the following propositions:

(1) Whether two separate returns should have been filed for the calendar year 1917, to wit, a consolidated return for the period from January 1 to June 20, 1917 (the date on which plaintiff's subsidiary ceased doing business and began its dissolution proceedings), and a separate return for the period from June 20 to December 31, 1917.

(2) Whether plaintiff was entitled to a part of the refund claimed by it upon the

ground that it had the right to separate the net taxable income received by it during each of said two periods and to twice deduct its full uninvested capital allowance ($263,010.20) in computing its excess profit tax liability for the entire calendar year 1917; that is, by deducting the sum of $263,010.20, in computing the excess profit tax owing by it under its consolidated return for the first period and by again deducting the sum of $263,010.20 in computing the tax owing under the separate return for the second period.

The mere fact that the Commissioner was aware, from the report of the field examiner, of the fact that plaintiff's subsidiary ceased to exist for any business purpose on June 20, 1917, and that plaintiff thereafter was the operating company, did not charge him with notice that he was expected to consider or rule upon these two propositions. The facts set forth in plaintiff's refund claim, and supporting briefs, were stated for the sole purpose of calling the attention of the Commissioner to one alleged error only, that is, that plaintiff's consolidated invested capital for the calendar year 1917 had been fixed at too low a figure. While it may not be necessary for a taxpayer, in connection with his refund claim, to inform the Commissioner as to the particular legal theory upon which he relies for recovery, it is necessary for the taxpayer to call the attention of the Commissioner to each ground or basis of recovery which he desires to be considered by the Commissioner in the determination of whether the taxpayer is entitled to a refund of all or any part of the amount which he is seeking to recover by his refund claim. Grays Harbor Motorship Corporation v. United States (Ct.Cl.) 45 F.(2d) 259, 282; Title Ins. & Trust Co. v. Goodcell, Collector of Internal Revenue (C.C.A.) 60 F.(2d) 803; Red Wing Malting Co. v. Willcuts, Collector of Internal Revenue (C.C.A.) 15 F.(2d) 626, 634, 49 A.L.R. 459. The various negotiations between plaintiff and the Commissioner, with reference to plaintiff's 1917 income and profit tax liability and its claim for refund, were conducted under the belief that the 1917 Revenue Act required plaintiff to file one consolidated return for itself and subsidiary covering the entire year of 1917. Except as to minor items, at no time was any consideration given by either plaintiff or the Commissioner to any question other than the question as to whether plaintiff had the right, under the 1917 Revenue Act,

to have its 1917 consolidated invested capital increased over the amount allowed by the Commissioner.

The plaintiff did not, in its original complaint filed in this cause on June 2, 1928, or in its first amended complaint filed on September 20, 1928, or in its second amended complaint filed on December 4, 1934, or at the trial of this cause, present for consideration or adjudication by this court either of the two propositions above stated. The controversy between plaintiff and defendant related solely to the *amount* of plaintiff's invested capital for the taxable year 1917. Upon appeal, the Court of Appeals so stated in the following language: "The controversy * * * has been the alleged fact that the Commissioner valued the capital investment too low," etc. Stutz Motor Car Co. of America v. United States, 80 F.(2d) 623, 625 (C.C.A.7).

Under the facts and the law, the plaintiff cannot now, for the first time, base part of its claim for refund upon its alleged right to file two separate 1917 returns, thereby separating its net taxable income into two different periods, and to deduct the full amount of the invested capital allowance in each return, in order to reduce its 1917 excess profit tax liability and thus establish its right to an additional refund. The filing of a claim for refund, setting forth the basis therefor, is a prerequisite to any suit to recover alleged overpayment of federal income taxes. One of the objects of such a requirement is to give the Commissioner an opportunity to consider and rule upon the legality of the basis upon which the taxpayer asserts his right to a refund. This is necessary to an orderly administration of the revenue laws. The failure of plaintiff to do so in the instant case precludes it from basing any part of its claim for refund upon the grounds which it is now, for the first time, asserting. U. S. v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 377, 75 L.Ed. 1025; Cont.-Illinois Nat. Bank & Trust Co. v. U. S. (C.C.A.) 67 F.(2d) 153, 154, 155, certiorari denied 291 U.S. 663, 54 S.Ct. 439, 78 L.Ed. 1054; Weagant v. Bowers, 57 F.(2d) 679, 680 (C.C.A.2); Red Wing Malting Co. v. Willcuts (C.C.A.) 15 F.(2d) 626, 634, certiorari denied 273 U.S. 673, 47 S.Ct. 476, 71 L.Ed. 879; Ferguson v. U. S. (Ct.Cl.) 2 F.Supp. 1012, 1015, certiorari denied 290 U.S. 694, 54 S.Ct. 130, 78 L. Ed. 597.

In the case of United States v. Felt & Tarrant Manufacturing Company, supra, the Supreme Court of the United States held:

"Section 1318 provides that 'no suit * * * shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been * * * illegally * * * collected * * * until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury. * * *' Article 1036, Treasury Regulations 62, provides that claim for refund shall be made on form 843, and that 'all the facts relied upon in support of the claim should be clearly set forth under oath.'

"Respondent filed an application under oath for reduction of its 1917 tax liability and for a corresponding return of taxes paid, on form 843, which it designated a claim 'for refund of taxes illegally collected.' But the sole ground stated for the demanded reduction of tax was that respondent had filed with the Commissioner an application for special relief from the amount of its excess profits tax under section 210 of the Act of 1917, 40 Stat. 307 [chap. 63].

"That section provides for a special method of assessment of excess profits taxes in any case where the Secretary of the Treasury is unable satisfactorily to determine the invested capital of the taxpayer. It has no relation to deductions from gross income on account of exhaustion or obsolescence of patents. In support of its claim, which was ultimately allowed in part, respondent prepared and filed a brief, and an oral argument was held in the office of the Commissioner; but neither in its claim for refund, its brief, nor at the hearing, was mention made of the deduction now claimed.

"The filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenue laws, compliance with which may be insisted upon by the defendant, whether the collector or the United States. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; Maryland Casualty Co. v. United States, 251 U.S. 342, 353, 354, 40 S.Ct. 155, 64 L.Ed. 297 [304]; Kings County Sav. Inst. v. Blair, 116 U.S. 200, 6 S.Ct. 353, 29 L.Ed. 657; Nichols v. United States, 7 Wall. 122, 130, 19 L.Ed. 125 [128].

"One object of such requirements is to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue, Nichols v. United States, supra, 7 Wall. [122] 130 [19 L.Ed. [125] 128], a purpose not accomplished with respect to the present demand by the bare declaration in respondent's claim that it was filed 'to protect all possible legal rights of the taxpayer.' The claim for refund, which section 1318 makes prerequisite to suit, obviously relates to the claim which may be asserted by the suit."

See, also, Weagant v. Bowers, supra, wherein the court states the law as follows: "We may assume that the tax was paid to avoid distraint, as the complaint alleges, although the stipulation of facts admits only the fact of payment, and was illegally collected. See Bonwit Teller & Co. v. United States, 283 U.S. 258, 259, 51 S. Ct. 395, 75 L.Ed. 1018. But granting this, the question is of the plaintiff's right to recover it when his claim for refund neither asserted as a ground that the tax was collected more than five years after the return was filed nor alleged facts showing this to be the case. Rev.St. § 3226 (26 U.S.C.A. § 156) requires a claim for refund to be made in accordance with the regulations, and these required that all facts relied upon should be clearly set forth. Art. 1036, Reg. 62; Art. 1306, Reg. 65. The plaintiff filed two claims for refund of the 1917 tax, but each relied solely upon the ground that the disputed item of income was a gift. Neither claim disclosed the date when the taxpayer's return was filed and therefore did not set forth all the facts necessary to show that the tax was collected too late. Consequently the point is not now available to the plaintiff. Connell v. Hopkins, 43 F.(2d) 773 (D.C.N.D.Tex.), is squarely in point, and cases too numerous for complete citation have recognized the principle that a taxpayer who brings suit after a refund has been denied can rely for recovery only on grounds presented to the commissioner. See United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272, 51 S.Ct. 376, 75 L. Ed. 1025; J. P. Stevens Engraving Co. v. United States, 53 F.(2d) 1 (C.C.A.5); Lewis A. Crossett Co. v. United States, 50 F.(2d) 292 (Ct.Cl.); Tucker v. Alexander, 15 F.(2d) 356 (C.C.A.8), reversed on another ground in 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253."

The court is unable to agree with plaintiff in its position that it should have

filed two returns for the year 1917. The Indiana Company had no separate existence for any business purpose after the termination of the affiliated status between it and the plaintiff; therefore, plaintiff had no right to file two 1917 returns, as now contended. See Houghton & Dutton Co. v. Commissioner, 26 B.T.A. 1420, 1422; Bunge, etc., Corp. v. Commissioner, 27 B.T.A. 150, 153; Sprague-Sells Corp. v. Commissioner, 30 B.T.A. 1165, 1170.

On June 20, 1917 the Indiana Company went out of business, transferred all of its property, assets, business, and good will to plaintiff by way of liquidating dividend, and took appropriate action to dissolve. Subsequent thereto it had no assets, transacted no business, received no income, had no outstanding corporate stock, and had no corporate existence except to complete its dissolution in the manner required by the laws of the State of its incorporation. Subsequent to June 20, 1917, plaintiff owned all of the property, assets, business, and good will formerly owned by the Indiana Company, its wholly owned subsidiary, and thereafter the business of manufacturing and selling Stutz cars—which had been the Indiana Company's business—was carried on by it.

In all the dealings between plaintiff and the Commissioner, relative to plaintiff's claim for refund, it was assumed by both that plaintiff had correctly filed one consolidated return for the entire calendar year 1917. This return was filed on April 22, 1918. On April 1, 1936, after the decision of the Circuit Court of Appeals in the case of Stutz Motor Car Company of America v. United States, supra, plaintiff, for the first time, presented to this court the questions: (1) Whether plaintiff had the right to file two 1917 returns (a consolidated return for the period from January 1 to June 20, 1917, and a separate return for the period from June 20 to December 31, 1917), and (2) whether plaintiff could increase the amount of its refund by deducting the full amount of its invested capital allowance in each return.

■ The court has heretofore in this memorandum concluded that the plaintiff is precluded from asserting now, for the first time, the right to increase its refund upon such grounds, and if it be not so precluded, the question yet remains whether the 1917 Revenue Act and Regulations required the filing of two returns. Regulations 45, Article 634, provide in substance that where

two corporations are affiliated at the beginning of the taxable year but the affiliated status is terminated during the year on account of a *change in ownership of the stock of the subsidiary* or a *change in control of the subsidiary,* then a full disclosure of the circumstances of such changes of stock ownership or control shall be submitted to the Commissioner and, where only two corporations are involved, a consolidated return should, under ordinary circumstances, be filed to date of change of stock ownership or control, and each corporation should file a separate return from such date to the end of the taxable period. Where two corporations only (a parent and a subsidiary) are concerned, the logical and reasonable construction to be given this regulation is that two returns should be filed in those cases only where, after termination of the affiliated status, the parent company and its former subsidiary *each* continues to exercise one or more of the business powers conferred on it by its charter—thus making it necessary for each of the two corporations to file a return for the taxable period subsequent to the termination of the affiliated status as would have been required if each corporation had begun business when the affiliated status was terminated. In the instant case, after the affiliated status between plaintiff and the Indiana Company was terminated on June 20, 1917, the Indiana Company had no existence for the purpose of carrying on any business authorized by its charter within the meaning of Regulations 45, Article 634. There was, therefore, no period during the calendar year when plaintiff and the Indiana Company were carrying on the business authorized by their respective charters and were not affiliated. The mere fact that the Indiana Company was being dissolved in accordance with the Indiana laws between June 20 and September 14, 1917, did not necessarily change plaintiff's control of the Indiana Company. Burnett v. Aluminum Goods Co., 287 U.S. 544, 548, 53 S.Ct. 227, 77 L.Ed. 484.

In the case of Stutz Motor Car Company of America v. United States, supra, the court said: "From the above considerations we are convinced that the fair market value of the Indiana corporation stock at the time it was acquired by appellant was $2,768,550, and it should have been included in appellant's invested capital at that valuation." Having arrived at the conclusion that the amount of the refund must be determined upon the basis of a

single consolidated return, and the Court of Appeals having fixed the value of the Indiana Company's stock to be included in plaintiff's invested capital, it follows, therefore, that judgment must be rendered in favor of plaintiff in the sum of $101,353.44, with interest thereon according to law.

On motion of defendant, the amount of the judgment was reduced to $90,103.44, with interest according to law, for which amount judgment was accordingly rendered on July 18, 1936.