NATIONAL WEEKLIES, Inc., v. REYNOLDS, Collector of Internal Revenue, et al.

No. 174 Civil.

District Court, D. Minnesota, Third Division.

Feb. 28, 1942.

Sherman W. Child, of Minneapolis, Minn., for plaintiff.

Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn., for defendants.

SULLIVAN, District Judge.

The plaintiff was organized in 1924, on the merger of other publishing companies, with an authorized capital stock of $100,000 of the par value of $100 per share. Its purpose was the publication and circulation of a German language newspaper. At that time the plaintiff acquired the subscription lists of the Westlicher Herold Publishing Company, and the subscription lists and printing equipment of the Press Publishing Company, the merged publishing companies. Plaintiff also acquired the subscription lists of other newspapers.

Subscriptions to a newspaper are usually acquired by, first, the sample copy method; second, the premium method; third, by solicitation of likely subscribers; and fourth, by the outright purchase of subscription lists from competing newspapers.

On March 15, 1935, plaintiff filed its corporation income and excess profits tax return for the calendar year 1934, and paid the tax liability in accordance therewith. Thereafter, its returns were examined and a deduction of $1,241.32 taken for "stops in subscription" was disallowed, and an additional tax in the sum of $170.68 was assessed by the Commissioner.

A claim for refund was duly filed and thereafter disallowed. This suit is now brought to recover said deficiency assessment. Heretofore the Commissioner determined and assessed certain deficiencies in the income tax of the plaintiff for the years 1927, 1928, 1929 and 1930. Said deficiency assessments were made by reason of the Commissioner's disallowance of depreciations of petitioner's subscription lists, based upon discontinuances or "stops" of subscriptions to its newspapers, and upon appeal to the Board of Tax Appeals by the taxpayer the action of the Commissioner was approved.

It is the plaintiff's contention that it, being a publisher of a German language newspaper, should be entitled to a deduction from its gross income for "stops" or discontinuances in subscriptions to its paper as depreciation of a capital asset—its subscription lists.

The defendants contend (1) that the plaintiff is estopped from making any further claim as to the validity of said "stop" deductions, since the same questions were presented to the Board of Tax Appeals and decided by that Board adversely to the contention made here by the plaintiff; (2) that the circulation structure of a newspaper is an intangible capital asset, subject to fluctuations from time to time, and that plaintiff is not entitled to deductions from its gross income for the cost of acquiring the subscription, upon the failure of a subscriber to renew his subscription; (3) that the plaintiff has failed to prove the cost to the transferors of acquiring the subscriptions.

Section 23(k) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 491, provides that in the computation of net income there shall be allowed as deductions: "(k) Depreciation. A reasonable allowance for the exhaustion, wear and tear of property used in the trade or busi-

ness, including a reasonable allowance for obsolescence. * * *"

It is the claim of the plaintiff that, because of the many reasons enumerated in its complaint: "Plaintiff's capital assets of its subscription lists were therefor a wasting asset * * *. Each particular subscription or name on a current paid up subscribers' list however suffered no depreciation which could be measured * * * in any reasonable * * * way until it finally ceased permanently to be a paid up subscription; and such subscriber's name on such list had a sale or market value which did not depreciate from year to year until it finally ceased permanently to be a paid up subscription." The foregoing excerpt from plaintiff's complaint symbolizes the claim it here makes. The claim in reality is not one based on "stop" subscriptions, but it is rather based on loss of revenue from anticipated renewal subscriptions. No refund was ever given by the plaintiff to any subscriber. Rather, the subscribers failed to renew their subscriptions and the field from which new subscribers might be obtained has been materially reduced.

■ The matter as presented resolves itself into a claim based on a loss of patronage, rather than one based on depreciation of assets, as the same is defined in said section 23(k). A subscription list is not unlike the "good will" of a business, although it may not possess all of its attributes. Patronage of a small business or a large industry rises and falls. This is generally expected in the business world. Likewise, the subscription list of a newspaper is subject to fluctuations. These fluctuations may be attributed to many causes, such as policy, service, and others not necessary to attempt to here enumerate, but may be characterized as those causes which affect the good will or patronage of a business institution.

In Appeal of Danville Press, 1 B.T.A. 1171, the taxpayer urged a deduction for the write-off taken by reason of failure to renew subscriptions on the part of the subscribers. The paid up subscriptions were part of a subscription list the taxpayer had theretofore purchased. The Board, in passing on this contention, held that the taxpayer had not purchased so many contracts expiring within a certain time, but the taxpayer had purchased an asset which was a "subscription list subject to fluctuations from time to time", and denied the petition of the taxpayer.

In Red Wing Malting Co. v. Willcuts, 15 F.2d 626, on page 633, 49 A.L.R. 459, the Circuit Court of Appeals for this Circuit quotes Montgomery's Auditing Theory and Practice as follows: "As good will does not suffer wear and tear, does not become obsolescent, is not used up in the operation of the business, depreciation, as such, cannot be charged against it. * * *" And the Court, on page 633 of 15 F.2d, 49 A.L.R. 459, had the following to say: "We are satisfied there can be no wear or tear of good will, or exhaustion thereof by use, and, even should we assume that good will, separate and distinct from tangible property, is property used in the business, section 234(a), subsection (7), of the 1918 Revenue Act limits the allowance for obsolescence to such property as is susceptible to exhaustion, wear, and tear by use in the business, and good will is not such property."

■ I am unable to appreciate any distinguishing features between the claim for deduction made for loss of good will which was passed on in the case of the Red Wing Malting Company, and the one at bar, where claim is made for the loss of renewals or anticipated subscriptions. While good will is property of an intangible nature (Red Wing Malting Co. v. Willcuts, supra), and the circulation of a newspaper is an intangible asset (Perkins Bros. Co. v. Commissioner of Internal Revenue, 8 Cir., 78 F.2d 152), each is different "from such intangibles as patents, contracts or franchises".

■ There is no language in Section 23(k) of the Revenue Act indicative of any intention on the part of Congress to permit a deduction for the fluctuations in the value of any asset, either tangible or intangible, until a final disposition of such property. Of course, deductions may be taken for the wear and tear of such property which is susceptible to exhaustion, wear and tear, by reason of use in business, and a deduction may be taken for loss in the value of property by reason of its gradually wearing out or falling into disuse. A subscription list as such is not subject to exhaustion, wear or tear by use in business. No deduction for loss of anticipated renewals or subscriptions can be permitted.

■ The plaintiff was organized in 1924 upon the merger of other publishing companies. The transaction is brought within the provisions of Section 203(b)

(4) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 5. See Memorandum Opinion of Board of Tax Appeals, November 29, 1933. Section 204(a) (8) of said Act, 26 U.S.C.A. Int.Rev.Acts, p. 9, provides that after such a transaction, the cost basis of the assets in the hands of the new owner shall be the same as it was in the hands of the transferors. So to determine what depreciation might be allowed in instances where a depreciation may be taken, the cost basis of those assets to the transferors must be established. The value of a subscriber in 1913, or the conclusion on the part of a witness that the usual cost of a subscriber is so much money, without sustaining proof, does not establish the cost of subscribers to the transferors in this case. This failure of proof in establishing the cost of subscribers to the transferors is, in itself, fatal to the maintenance of plaintiff's claim.

In view of the conclusion which the Court has reached, there is no need for comment on the defense of res adjudicata asserted by the defendant.