**FERGUSON v. UNITED STATES.**
No. L–82.

Court of Claims.
April 10, 1933.

R. M. O'Hara, of Washington, D. C., for plaintiff.

George H. Foster, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

In 1918 the plaintiff by a written contract sold to the General Electric Company his entire business and all the assets used in connection therewith. One Gladney was to receive a part of the purchase price, but this is not material to any question raised herein. Under the contract, a certain amount was to be paid the plaintiff in cash and the balance in four equal annual installments with interest. No promissory notes or other negotiable instruments were executed. It is agreed that the profit to plaintiff in this transaction was $129,532.52. The Commissioner assessed all of this profit against plaintiff for the year 1918. The plaintiff paid taxes for that year accordingly, filed a claim for refund, and now brings this suit on the ground that the deferred payments provided for in the contract had no fair market value in that year, and that consequently there was no profit to be assessed until his cost had been returned. The defendant contends that the suit is not based upon a ground stated in the claim for refund and also that the deferred payments provided in the contract of sale had a fair market price or value in 1918 equal to the full amount thereof.

The first question to be determined in this case is whether plaintiff's claim for refund presented the same matter as that upon which suit is brought. An examination of the claim shows that it contains some incorrect statements and also that not all of its statements are consistent. This, however, would not prevent recovery thereon if it in some way or in some part thereof informed

the Commissioner of the claim upon which recovery is now sought. The findings of fact show that in the application for refund it was stated that the contract involved in the case contained "clauses which, if violated * * * constituted a forfeiture of the payments not yet made by the General Electric Company." This statement was not correct. The contract was not assignable, and there were certain covenants made therein by the plaintiff, but none of these matters would have afforded ground for a forfeiture. If an assignment was made, it was a mere nullity, and would not affect plaintiff's rights under the contract. If plaintiff broke the covenants made on his part, it might give rise to a damage suit or a valid counterclaim against the payments to be made by the other party, but would not otherwise affect the payments to be made by the General Electric Company. The matter which seems to be relied upon as apprising the Commissioner of the claim now made was a statement in the application for refund that the "amounts did not constitute income until paid by the General Electric Company"; that it had been so held by the Commissioner with reference to payments made to another party under the contract; and that the claim is "based on such decision." While this statement is not very clear or definite, we think the Commissioner must have understood that the plaintiff, by the word "amounts," referred to the payments to be made under the contract, and that he claimed that these installment payments did not constitute income until received, but this is not the basis of the action set forth in the petition nor is it the claim now made, which is that the obligations of the purchaser for deferred payments had no fair market value in 1918. The petition also contains an allegation that any income to plaintiff out of profit from the sale was accountable for by him either on the installment basis or the deferred payment plan.

It is urged on behalf of defendant that the word "amounts" should be construed as meaning "deferred payments," but this is just another way of stating that payments were to be made on the contract by installments. It will be conceded that the Commissioner was duly informed of this fact, but we do not think it helps plaintiff's case. All that the Commissioner could infer from the confused and indefinite statements of the claim for refund was that plaintiff claimed the computation of the tax was subject to the rules that applied to installment contract cases under section 212 (d) of the Revenue Act of 1926 (26 USCA § 953 (d), and that therefore the

Commissioner erred in assessing a tax for the year 1918 upon the total of plaintiff's profits instead of upon the part of the profits that was realized in that year. This is clearly shown by the fact that plaintiff's claim concluded with the statement that "it is contended that the profit to be reported in each of the years 1918 to 1922, inclusive, is as follows:

| | |
|---|---|
| 1918 | $46,631.69 |
| 1919 | 20,725.20 |
| 1920 | 20,725.20 |
| 1921 | 20,725.20 |
| 1922 | 20,725.20 |
| | 129,532.49" |

On an installment sales basis the computation set out in the application for refund of profits taxable in the years 1918 to 1922 was correct, and nothing was stated about computing the tax on any other basis. There was no mention of the cost of the property, or that the contract could not be assigned, or of the claim now made and upon which the suit must be maintained, if it can be maintained at all, namely, that no profit was realized until the cost had been returned through the payments, and no allegation that there was no tax whatever due on the sale for the year 1918. Nor was it stated that payments made up to and including that year did not exceed the cost of the property. Instead of alleging that no profit whatever was realized in 1918, it was stated to the contrary that $46,631.69 profit should be reported for that year and the tax computed on the proportion of profit realized for each year thereafter. The Commissioner, as it seems to us, could understand nothing from the refund claim except that plaintiff's application for refund was based on the claim that the rules with reference to installment sales contracts in accordance with section 212 (d) of the Revenue Act of 1926 should be applied, and that his claim was in substance merely that $46,631.69 should be taxed in that year instead of $129,532.52. On this claim the Commissioner correctly decided that, as the initial payment was more than one-fourth of the purchase price, the case did not come within the provisions of the section above referred to, and therefore rejected the claim made on this basis.

We are unable to agree that the statements which were made in the claim to the effect that there were covenants in the contract which might make the payments forfeitable in any way affect this conclusion.

Even if these statements were correct (and in our judgment they were not), the claim as set forth in the application for refund is not in any way based thereon. In so far as it set out any matter that might entitle the plaintiff to a refund, the other statements, if not in actual conflict with the allegations with reference to forfeiture of the payments, at least had no connection therewith and made no reference thereto. If plaintiff recovers at all in this case, he must recover on the ground that the contract, not being assignable, had no market value, and that no profit was realized until the cost to plaintiff had first been received, all of which is, in our judgment, an altogether different claim from that set up in the application for refund.

We do not think it necessary to determine whether the Commissioner proceeded correctly, but there are some observations that should be made with reference to the situation when the Commissioner assessed the tax. He held that the tax was all due in the year of the first payment as shown by finding 3. What the plaintiff proposed was that the tax should be assessed in each year as the payments were received in proportion to the amount thereof, and this plan would have greatly reduced the amount of the plaintiff's tax. If the plaintiff had instead suggested the plan which is now proposed in accordance with which all the tax would have been assessed at the time of the last payment, and the Commissioner had acted thereon, it probably would have made but comparatively little difference in the amount to be paid by him. This may have been one of the reasons why there was no suggestion of anything of the kind in the claim for refund. But, however, this may be, we find that, after the statute of limitations had run against the collection of the tax for the year in which the last payment was made, plaintiff filed his petition and amended petition, and now claims that the tax should have been assessed under a method which was not proposed by the claim for refund.

We have so often held that no recovery can be had where the suit is grounded upon a different claim from the one which was made the basis for the application for refund that we think no citation of authorities is necessary to sustain this rule. It follows that the petition should be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WHALEY, Judge, concur.

LITTLETON, Judge (dissenting).

The total profit of $129,532.52 under the contract of sale made in 1918 is not in question. The basis of the suit is that the contract obligation of the General Electric Company to pay plaintiff $850,000 in four equal installments of $212,500 in February, 1919, to 1922, inclusive, had no fair market price or value in 1918 within the meaning of the Revenue Act of 1918, for the reason that such deferred payments were not evidenced by negotiable notes and the contract of sale was not assignable. In these circumstances it is contended by plaintiff that "the total profit of $129,532.52 constitutes realized gain in 1922 on the receipt of the last installment payment" in which year he received the return of his investment of $1,120,467.48 in the property sold.

The defendant does not question the correctness of plaintiff's computation, if he is correct in claiming that he filed a sufficient claim for refund and that the contract obligation of the purchaser had no fair market value in 1918 within the meaning of section 202 of the Revenue Act of 1918 (40 Stat. 1060).

The defendant contends, however, (1) that this suit is not based upon a ground stated in the claim for refund, and (2) that the total of the deferred payments of $850,000 provided in the contract of sale had a fair market price or value in 1918 equal to the full amount thereon.

On the first question the facts disclose that in the audit of plaintiff's return for 1918 the Commissioner determined a net profit to the plaintiff of $129,532.52, and held that this entire profit was taxable to the plaintiff in 1918, for the reason that the contract obligation of the purchaser to make the deferred payments over a period of four years had a fair market price of $850,000. An additional tax was assessed on the basis of this determination, and in due time plaintiff filed a claim for refund, which was rejected. The principal ground upon which this claim for refund was based, and which was stated therein, was that the deferred payments provided in the contract, which were not represented by notes or other negotiable instruments, but were covered only by a contract containing clauses which, if violated over a period by the plaintiff, would constitute a forfeiture of the payments which had not been made, did not constitute income until paid by the General Electric Company. In other words, plaintiff plainly alleged in sub-

stance in his claim that the Commissioner had erred in treating the contract obligation to make the deferred payments as the equivalent of the receipt of $850,000 in cash in 1918, because the contract was not assignable, and therefore had no fair market value, and "the deferred payments did not constitute income until paid." The basis of this suit is that the deferred payments provided in the contract of sale did not constitute income until paid, and that no taxable gain arose from the transaction on the deferred payment basis until the total of the payments made equaled the cost of the property sold. Articles 44 and 46, Regulation 69. The statute and the regulations do not require a technical construction of a claim for refund in determining whether the nature of the claim asserted is sufficiently disclosed. On the contrary, the language used in stating the ground of the claim should receive a reasonable rather than a strict and technical interpretation, and, in deciding whether the basis of a claim is sufficiently stated, due consideration should be given to the nature of the Commissioner's determination giving rise to the claim and to the basis of the decision rendered by him in determining the tax, the refund of which is claimed. The particular form of the claim for refund ought not to preclude the plaintiff from obtaining a refund of what was fairly shown by the facts to be due. In a proceeding for the refund of a tax alleged to have been erroneously collected in which the plaintiff has set forth, by way of a claim for refund, a plain statement of facts without technical formality and asks for a refund on a general ground, or in an alternative or cumulative form, he ought not to be held to the strict technical rules of pleading, but the Commissioner and the courts should give to his statement a liberal interpretation and afford him such relief as he may show himself substantially entitled to if within the fair scope of the claim as exhibited by the facts set forth therein. In this instance there was no dispute as to the facts, and there is no contention that the facts were not fully and sufficiently stated in the claim. The Commissioner determined the total profit derived from the sale, and held that, because there was a contract containing a promise to pay in the future, the entire profit was the equivalent of cash, and therefore constituted net income for 1918. This the plaintiff denied in his claim, and contended in substance that the profit, which was represented by the deferred payments, was not the equivalent of cash in 1918, and did not represent taxable income until received. Upon consideration of

the claim for refund, the Commissioner declined to change his first determination, and held that the entire profit was taxable in 1918 and rejected the claim in full. It will thus be seen that the basis of this suit, that the excess of the sales price over the cost basis was not taxable income in 1918, was fairly and reasonably disclosed in the claim for refund. The Commissioner was not misled. The statute and the regulations, articles 44 and 46, Regulation 69, provided the method of determining the tax due and the year in which it was payable under the facts stated. Plaintiff in his claim for refund proposed to the Commissioner a computation of the proportion of the total profit of $129,-532.52 taxable in each of the years 1918 to 1922, inclusive, on a strictly installment sales basis, as provided in section 212 (d) of the Revenue Act of 1926 (26 USCA § 953 (d). This computation was not correct, inasmuch as the initial payment received by plaintiff in 1918, as evidenced by the facts found by the Commissioner and stated by the plaintiff in his refund claim, was more than 25 per cent. of the total sales price. But an erroneous computation of the tax is not fatal to a claim for refund, if it is otherwise sufficient, as I am convinced this claim was.

Ordinarily, a complete statement of facts in a claim for refund would sufficiently disclose the nature of the claim, and this, I think, is true in this case. The facts stated in the claim are the facts set forth in the petition, and the grounds disclosed and stated in the claim, i. e., that the Commissioner was wrong in deciding that the promise to pay the installments was the equivalent of cash and that such payments did not constitute income until received, are the grounds relied upon in this suit. It is easy to see, I think, that the grounds upon which the plaintiff was relying in his claim for refund were that the deferred payments of $850,000 were not income in 1918 and that the profit of $129,-532.52 was not taxable in that year. He claimed a refund of a certain amount, "or such greater amount as may be legally refundable," and it has been uniformly held that in such circumstances the plaintiff is entitled to recover the correct overpayment. In the circumstances of this case I am of opinion that the claim for refund was sufficient to form the basis of the claim made in this suit.

The next question is whether the entire profit of $129,532.52 was taxable in 1918. I think it was not. Section 202 (b) of the Revenue Act of 1918 (40 Stat. 1060) pro-

vides that: "When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any." Inasmuch as the purchase price of the property sold by plaintiff in 1918 was not paid in that year, he was not taxable upon any portion of the excess of the sales price over the cost basis, unless the cash and the fair market price or value of the property, i. e., the contract, exceeded the cost of the property sold. The fair market value is the price which property will bring when it is offered for sale by one who is willing, but who is not obliged, to sell, and is bought by one who is willing or desires to purchase, but is not compelled to do so. "Market value" implies the existence of a public of possible buyers at a fair price. The adjective "fair" emphasizes the idea of fairness inherent in this conception of market value, and excludes any possibility of a construction of the words "market value" with reference to a market in which or to circumstances under which, for any reason, a fair price could not be obtained. In view of the express provisions of the contract of sale in this case that it could not be assigned by the plaintiff, it seems clear to us that it had no fair market value, for no one would wish to purchase an obligation or a contract which he could not enforce. An assignee or purchaser under this contract would have acquired only a cause of action against the assignor. An assignment by plaintiff of his right under the contract to the future payments would not be enforceable against the General Electric Company in the hands of the assignee. I think it must therefore be admitted that no buyer at any price, much less a fair price, could have been found for the obligations of the General Electric Company for the deferred payments. Moreover, the obligations of the purchaser in this case to make the deferred payments were not unconditional. The plaintiff agreed not to engage in, assist, advise, contribute to, or be interested in, the manufacture or sale of incandescent lamps anywhere in the United States for a period of five years from the date of the last payment in February, 1922, and a failure on the part of either of them to abide by that agreement prior to the last installment payment would have constituted a breach of contract and would have rendered uncertain what, if any, future payments would be made. I am of opinion that the obligation of the General Electric Company amounted to nothing more than an account receivable. In G. C.

M. 1387, vol. VI, 1 C. B. 48, it was held that the method to be employed in computing the profit to be reported in the case of a casual sale of property when the initial payment exceeds one-fourth of the purchase price and the deferred payments are not represented by any notes or other evidence of indebtedness of the purchaser, the obligation of the purchaser to make such payments being based solely on the promise to pay contained in the contract, is defined by articles 44 and 46, Regulation 69, under the Revenue Acts of 1924 and 1926, and that the "terms 'evidences of indebtedness of the purchaser' and 'obligations of the purchaser received by the vendor' as used in arts. 44 and 46, respectively, clearly refer to something received by the vendor to represent the promise or promises to pay contained in the contract of sale. If, therefore, the deferred payments are not represented by notes or other like obligations of the purchaser, the cash received by a taxpayer on the cash receipts and disbursements basis should be applied against and reduce the basis of the property sold and, if it is in excess of such basis, the excess should be reported as profit. When the deferred payments are received they should be applied against the reduced basis, if the initial payment was not in excess of the basis, and the excess over the reduced basis or the total amount, received, as the case may be, should be included in income for the year received." See Burnet v. Logan, 283 U. S. 404, 51 S. Ct. 550, 75 L. Ed. 1143, T. D. 3921, vol. V, 2 C. B. 24. It may be admitted that, the purchaser in this case being solvent, its promise to pay the specified amounts in future years was, in a certain sense, of value to the plaintiff, but value which is based wholly on a right to receive something in the future is not taxable income within the meaning of section 202 (b) of the Revenue Act of 1918 unless the right to receive payment in the future can be said to be the equivalent of cash; that is, that said promise to pay can be immediately and readily converted into cash by the taxpayer. The deferred payments involved in this case were not represented by an unconditional contract of a kind that is freely sold and dealt in. G. C. M. 3350, vol. VII, 1 C. B. 62. Charles C. Ruprecht, 16 B. T. A. 919; Id. (C. C. A.) 39 F.(2d) 458; W. A. Hoult et al., 23 B. T. A. 804.

Based upon the conclusion that the obligations of the General Electric Company for the deferred payments had no fair market value within the meaning of the Revenue Act, the payment in 1918 and those of subsequent years should be applied against and reduce

the cost basis to the plaintiff of the property sold. Plaintiff did not receive the return of his costs until 1922, and the total profit of $129,532.52 therefore constituted realized gain in 1922 upon receipt of the last installment payment of $212,500 as contended by plaintiff. Although the statute of limitation with reference to 1922 had expired when plaintiff filed his claim for refund in January, 1928, he offered to make proper return of the profit as income for the year to which it was properly attributable, but a court cannot require that this be done. The year 1922 is not involved in this proceeding, and the record does not contain sufficient information upon which a determination may be made as to whether a credit may now be made against the tax due on the profit for 1922.

I am of opinion that plaintiff is entitled to recover the overpayment of $84,150.25 for 1918, with interest at 6 per cent. per annum, as provided by law.

WILLIAMS, Judge, concurs in this dissenting opinion.